Filed 9/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| SUSAN JEAN BADER,<br><br>    Plaintiff and Appellant,<br>v.<br><br>AVON PRODUCTS, INC.,<br><br>    Defendant and Respondent. | A157401 and A158611<br><br>(Alameda County<br>Super. Ct. No. RG18923615) |

In this strict products liability, negligence, and fraud case, plaintiff Susan Jean Bader (Bader), the representative of the estate of Patricia Schmitz (Schmitz), sues defendant Avon Products, Inc. (Avon) alleging that Schmitz used Avon's perfumed talc powder products for around 20 years, and that these products contained asbestos and caused Schmitz's mesothelioma.[1] The trial court granted Avon's motion to quash service of summons (Code Civ. Proc., § 418.10),[2] concluding that it lacked specific personal jurisdiction over Avon because Bader failed to establish that her claims were related to or arose from Avon's forum contacts (the "relatedness prong"). Specifically, the

---

[1] Bader substituted for Schmitz as the plaintiff during the pendency of this appeal after Schmitz passed away. Although Schmitz was the named plaintiff during the proceedings below, we refer to Bader as the named plaintiff throughout this opinion for ease of reference.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

trial court found that Bader failed to establish that Avon sold, and Schmitz used, in California talc powder products that contained asbestos as opposed to talc powder products without asbestos. The trial court also found that Bader failed to show that Avon injected the particular products at issue into California in a manner that related to Schmitz's acquisition and usage of those products.

Bader appeals, contending that (1) she satisfied her burden on the relatedness prong with evidence of Avon's sale of the allegedly defective talc powder products to Schmitz in California, (2) her suit arises out of this contact, and (3) she did not have to additionally prove that these products were in fact defective (contained asbestos) at the jurisdictional phase. Alternatively, Bader argues that she established that Avon's perfumed talc powder contained asbestos and the trial court erred by narrowly restricting the scope of further jurisdictional discovery. We conclude that Bader satisfied her burden on the relatedness prong, and, because Avon does not contest purposeful availment or argue that the exercise of personal jurisdiction over it would be unreasonable, we reverse the trial court's order granting Avon's motion to quash. We also reverse the trial court's order awarding prevailing party costs to Avon.[3]

FACTUAL AND PROCEDURAL BACKGROUND

Schmitz lived in Alameda, California all her life. She became a teacher in 1979 when she began working full time at a school in Oakland where she taught until 2000; thereafter, she taught in Alameda.

Schmitz used Avon perfumed talc powder products starting in 1980 and continuing through sometime in early 2000. At her first full-time teaching job in Oakland, there were many "Avon ladies" in the parent community who

_____

[3] Bader challenges the costs award in consolidated appeal no. A158611.

2

left catalogs in the faculty room and sometimes in the front office. That was how Schmitz was introduced to and began using Avon perfumed talc powders. Thereafter, she placed orders for these products about twice a year, and she used a number of different scents, although she did not remember specifically when she bought and used each scent.

Bader sued numerous defendants for strict products liability (design defect and failure to warn), negligence, and fraud. She alleged that Schmitz used defendants' cosmetic talc products in Alameda County for over two decades. She further alleged that defendants placed defective products into the stream of commerce, and that their talc powders were defective because they caused hazardous asbestos to become airborne during use. As a result of Schmitz's exposure to defendants' cosmetic talc, Bader alleged that Schmitz developed mesothelioma.

Avon moved to quash service of summons, claiming that Bader had the burden to produce evidence showing that the Avon talc powder products she used contained asbestos in order to establish the relatedness prong under *Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1776 (*Bristol-Myers*).

Bader opposed, arguing that she did not have to establish the product defect at the jurisdictional phase. She contended that she satisfied her burden on the first and second prongs of the jurisdictional analysis with evidence showing that Schmitz was introduced to Avon talc powder products by Avon representatives in the parent community who left catalogs in the teacher's lounge at the school where Schmitz taught in California; Schmitz ordered and purchased Avon products approximately twice yearly thereafter; by the 1970's, Avon sold its products in all 50 states; and Avon sold its talc powder products through a direct sales model whereby Avon representatives

3

sold directly to their customers and had direct, personal relationships with their customers. Bader alternatively requested leave to conduct jurisdictional discovery, seeking discovery on twenty-six topics for the period of 1970 through the present.

At the first hearing on the motion to quash, Bader reiterated that she did not have to establish the product defect at the jurisdictional phase, but much of the hearing focused on whether she should be allowed to pursue jurisdictional discovery. The trial court pointed out that Bader's discovery requests were too broad, and Bader requested discovery on three topics—"the formulas for the products at issue that were sold here, the sources of talc for the products at issue that were sold here, the tests that the corporate representative says exist from third parties as to the talc that was included in the products that were sold here." Later in the hearing, Bader's counsel stated that Bader would need discovery on the formula for the talc and the products at issue, the source of the talc therein, the identity of the suppliers, tests of the talc, and what Avon learned through its membership in the Cosmetic Toiletry and Fragrance Association.

The trial court issued an order finding that Bader did not meet her initial burden to establish the exercise of personal jurisdiction over Avon was constitutional. However, the court allowed jurisdictional discovery and ordered Bader to file a proposed order allowing specific jurisdictional discovery that substantially conformed to counsel's oral proposal at the hearing. Bader proposed jurisdictional discovery, and Avon opposed the discovery on the ground that it vastly exceeded the scope of counsel's oral proposal. After a hearing, the court found Bader's proposed discovery exceeded the scope of her prior oral proposal, but the court allowed her to conduct jurisdictional discovery into "Defendant's talc products with the

4

names Candid, Timeless, Imari, Foxfire, Topaze, Honeysuckle, Wild Jasmine, Night Magic, Pearls & Lace, Moonwind, and Contrast" on the topics of "(1) the formulas for the above-listed products, (2) the sources for those products; and (3) the tests of the sources for those products," for the timeframe of 1979 to 2000.

After discovery, the parties filed supplemental briefing. Along with her supplemental brief, Bader submitted Avon's responses to special interrogatories and excerpts from the deposition of its corporate representative. Bader also submitted a declaration from an expert, Dr. Longo, who declared that his lab had analyzed the talc powder in a 1987 bottle of Night Magic from Canada and found asbestos therein. Pictures taken of the product assessed show a container with "Night Magic," "AVON CANADA INC., MONTRÉAL," and copyright "AVON 1987" on the label. Avon objected that the declaration was untimely and irrelevant, and that the sample tested by Dr. Longo was not properly authenticated.

After another hearing, the trial court granted Avon's motion to quash. The court "assume[d] arguendo" that Bader met her burden of proving that Avon purposefully availed itself of the California market through evidence that Avon sold in all 50 states by 1970. As to the relation between Avon's forum-related activity and the controversy, the trial court found that Bader failed to establish that "she used asbestos-containing talc products (as distinguished from talc products in general) which were manufactured by [Avon] in this state or were distributed, sold, or marketed by [Avon] in this state." The trial court rejected Dr. Longo's test results because Bader failed to provide evidence establishing the relationship between Avon Canada, Inc. and Avon.

5

The trial court also found that Bader failed to show Avon purposefully injected product into the California market in a way that relates to her claims because there was no evidence that, during the relevant timeframe, Avon "shipped so many units of the Avon talc scents named by [Schmitz] to California personnel responsible for distribution to [Schmitz's] approximate geographical area," and further found that Schmitz's testimony "only [went] to [her] connection to [Avon's] products and [said] nothing about how those products got into California." Finally, the trial court held that the burden had not shifted to Avon to disprove the third prong of the specific jurisdiction analysis concerning the reasonableness and fairness of exercising jurisdiction, and it declined to rule on Avon's evidentiary objections.

Subsequently, the trial court granted Avon's request for prevailing party costs under section 1032 and entered a judgment awarding costs to Avon. Bader timely appealed from the order on the motion to quash and the order and judgment awarding costs.

DISCUSSION

A. *Governing Legal Principles*

When a defendant moves to quash service for lack of personal jurisdiction, the plaintiff bears the burden of proving facts supporting the exercise of jurisdiction by a preponderance of the evidence. (*Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 293 (*Farina*).) When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).) When there is no conflict in the evidence, however, the question of jurisdiction is one of law and the reviewing court engages in an independent review of the record. (*Ibid.*)

6

California courts may exercise jurisdiction on any basis consistent with the Constitutions of California and the United States. (§ 410.10.) Jurisdiction is proper if a defendant has minimum contacts with California such that a suit here does not offend traditional notions of fair play and substantial justice. (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (*Internat. Shoe Co.*); *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 552 (*Jayone*).)

Personal jurisdiction can be general (all-purpose) or specific (case-linked). (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1779–1780.) A court has general jurisdiction over defendants who are at home in the court's forum; general jurisdiction allows a court to hear any claim against a defendant, regardless of where the underlying events occurred. (*Farina*, *supra*, 50 Cal.App.5th at p. 294.) In contrast, specific jurisdiction allows a court to adjudicate only those disputes relating to the defendant's contact with the forum. (*Id.*; *Bristol-Myers*, at p. 1780.)

Only specific jurisdiction is at issue in this appeal.[4] Specific jurisdiction exists where (1) the defendant has purposefully availed itself of a forum's benefits; (2) the controversy relates to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction comports with fair play and substantial justice. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.) Regarding the first and third prongs, Bader argues that Avon purposefully availed itself of the California forum through its representatives' sales of Avon talc powder products directly to Schmitz in California through its "direct sales model," and the exercise of jurisdiction over Avon would be fair and reasonable. As it did below, Avon challenges only the relatedness

---

[4] The trial court found that it did not have general jurisdiction over Avon, and Bader does not challenge this ruling.

prong. Thus, we accept that the first and third prongs of the specific jurisdiction analysis are satisfied, and we turn to the relatedness prong.

*B. Relatedness*

The questions presented in this appeal are whether the relatedness prong is satisfied and whether *Bristol-Myers*'s rejection of the "sliding scale approach" applied by the California Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, 806, and previously endorsed in *Vons*, *supra*, 14 Cal.4th at pp. 452, 455, requires Bader to prove that the Avon perfumed talc powder products used by Schmitz contained asbestos— the alleged defect[5]—at the jurisdictional stage. Bader contends that she satisfied the relatedness prong because her claims are that Avon sold Schmitz defective talc powder products that contained asbestos and caused Schmitz injury, and these claims arise out of or relate to the proven direct sale of the allegedly defective talc powder products by Avon representatives to Schmitz in California. Avon contends that *Bristol-Meyers*, *supra*, 137 S.Ct. at p. 1781, requires proof that the talc powder products used by Schmitz contained asbestos because sales of talc powder products without asbestos cannot serve as the jurisdictional basis for claims relating to talc powder products with asbestos. As we explain below, Bader has the better argument.

1. *Bristol-Myers's* Rejection of the Sliding-Scale Approach

The issue presented in this appeal requires us first to address briefly the origin and rejection of the sliding scale approach to specific jurisdiction.

---

[5] In a talc powder asbestos case, the "material issue" or "question is whether it is more likely than not that the talc product was contaminated with asbestos during the time the plaintiff used it." (*LAOSD Asbestos Cases* (2020) 44 Cal.App.5th 475, 489.) Avon correctly observes that "[w]ithout the asbestos, there is no defect."

8

In *Vons*, the California Supreme Court addressed the question of what test applies to determine whether a plaintiff's claims are " 'related to or "arise[] out of" ' " the defendant's forum contacts. (*Vons*, *supra*, 14 Cal.4th at p. 446.) Noting that the United States Supreme Court had yet to clarify standards for the relatedness prong, the California Supreme Court discussed the varying tests used, observing that some cases hold that a defendant's forum contacts have to be a "proximate cause" of the plaintiff's claims and others that the defendant's forum contacts have to be a " 'but for' " cause of the plaintiff's claims. (*Id.* at p. 451, fn. 4, pp. 461–468.) The court rejected these tests, along with a "substantive relevance" test whereby the relatedness prong is met only when the conduct constituting a forum contact took place in the forum and normally would be pleaded under state substantive law applicable to the plaintiff's cause of action. (*Id.* at pp. 464, 468–469, 473.) The court adopted a "substantial connection" test: "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." (*Id.* at p. 452.) The court also adopted what it later referred to as a "sliding scale" approach to specific jurisdiction, holding, "[F]or the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related." (*Ibid.*; *Bristol-Myers Squibb Co. v. Superior Court*, *supra*, 1 Cal.5th at p. 806.)

In *Bristol-Myers*, the United States Supreme Court rejected the California Supreme Court's " 'sliding scale' " approach, which it characterized as an approach pursuant to which the strength of the requisite connection between the forum and the plaintiff's claims is relaxed if the defendant has

9

extensive forum contacts unrelated to those claims. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1781.) The plaintiffs in *Bristol-Myers* were California and non-California residents who brought a mass tort action claiming that Bristol-Myers's drug, Plavix, was defective and caused plaintiffs' injuries. (*Id.* at p. 1778.) Bristol-Myers sought to quash service of summons with respect to the non-California residents who bought, used, and were injured by Plavix outside California. The California Supreme Court found specific jurisdiction existed under the sliding scale approach: Bristol-Myers advertised Plavix in California, made $900 million from California Plavix sales, operated five research facilities in California, employed hundreds of sales representatives in California, maintained a state-government advocacy office in Sacramento, entered into a contract with a California distributor to distribute Plavix, and the nonresidents' claims were very similar to those of the California residents. (*Id.* at pp. 1778–1779.)

The United States Supreme Court reversed. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1784.) It viewed the sliding scale approach as a "loose and spurious form of general jurisdiction" with "no support" in precedent. (*Id.* at p. 1781.) For specific jurisdiction, neither "a defendant's general connections with the forum" nor " 'continuous activity of some sorts within [the] state' " is " 'enough.' " (*Ibid.*) "In order to exercise specific jurisdiction over a claim, 'there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' [Citation.] When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (*Ibid.*, quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown* (2011) 564 U.S. 915, 930–931, fn. 6 ["[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a

10

claim unrelated to those sales"].)  The Court applied these principles in holding that there was no specific jurisdiction over nonresidents' claims notwithstanding the fact that other buyers were prescribed, obtained, and ingested Plavix in California.  (*Bristol-Myers*, *supra*, at p. 1781.)  "Nor [wa]s it sufficient—or even relevant—that [Bristol-Myers] conducted research in California on matters unrelated to Plavix"; likewise, "[t]he bare fact that [Bristol-Myers] contracted with a California distributor" was insufficient where the plaintiffs failed to trace their drugs to that distributor.  (*Id*. at p. 1783.)  "What [wa]s needed—and what [wa]s missing [t]here—[wa]s a connection between the forum and the specific claims at issue."  (*Id*. at p. 1781.)

### 2.  Proof of Asbestos

With that background, we turn to whether *Bristol-Myers* mandates that Bader establish at the jurisdictional stage the alleged defect in the Avon talc powder products that she used.  We do not believe it does.

First, we reject any insinuation on Avon's part that this should be treated as a situation where there are two separate product lines such that the exercise of personal jurisdiction implicates the invalidated sliding scale approach.  There is one product line at issue—Avon's perfumed talc powder. Bader established that Schmitz purchased and used this product in numerous scents.  In verified discovery responses, Avon refers to these products as its "talc-based body powder products."  Avon contends that these products did not contain asbestos, and Avon will prevail if Bader cannot prove otherwise.  However, this is not a case where the plaintiff claims harm in the forum from an allegedly defective product and seeks to establish personal jurisdiction over the defendant by showing the defendant's extensive in-forum sales of a different product.  Nor is it a case like *Bristol-Myers* where

11

nonresident plaintiffs purchased the defendant's product and suffered injury therefrom outside of the forum but sought to sue based on the defendant's in-forum sales of the same product to other consumers. (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1780–1781.)

Second, *Bristol-Myers* requires that, in order for a court to exercise specific jurisdiction, " '*the suit'* must 'aris[e] out of or relat[e] to the defendant's contacts with the forum' " (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1780), not that a plaintiff suing over injury caused by an allegedly defective product prove the product defect at the jurisdictional phase. Avon claims that, had the plaintiffs' allegations in *Bristol-Myers* been that they consumed contaminated Plavix, they would have had to have shown they purchased the contaminated drug, but this contention misconstrues the relevant inquiry. The plaintiffs in *Bristol-Myers* alleged that Plavix was defective. (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1778–1779 [reciting the California Supreme Court's statement that the nonresident and resident plaintiffs' claims are based on the same "*allegedly defective product*" (italics added)].) Specific jurisdiction over the California residents' claims was undisputed, as Bristol-Myers sold the allegedly defective drug in California to residents who were injured in the forum; their claims thus arose from or related to Bristol-Myers's contacts with the forum. (See *id.* at pp. 1779, 1781 [noting that the California residents could bring their claims in California]; *id.* at p. 1783 [observing the large group of Texas residents could likely sue Bristol-Myers as a group in their home state as could the group of Ohio residents].) Conversely, there was no personal jurisdiction over the claims of the nonresident plaintiffs who bought, used, and were injured by Plavix outside California. (*Id.* at pp. 1781–1782, 1784.) Bader is effectively in the

12

same position as the California plaintiffs, and Avon attempts to read into *Bristol-Myers* a proof of defect requirement that is not there.[6]

Instead, at the jurisdictional phase, courts speak of *allegedly* defective products. "[I]f the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its *allegedly defective merchandise* has there been the source of injury to its owner or to others." (*World–Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297–298, italics added; *Bristol-Myers*, *supra*, 137 S.Ct. at p. 1779 [plaintiffs sued over an "*allegedly defective product*" (italics added)]; *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 671 [manufacturer's efforts to serve the market for its product in California "should have caused [manufacturer] to anticipate being haled into a California court to defend an action arising from an *alleged defect* in its product" (italics added)].) Not requiring proof of a product defect at the jurisdictional phase is consistent with the purpose of the personal jurisdiction doctrine, which focuses not on

---

[6] Avon cites *Lawson v. Simmons Sporting Goods, Inc.* (Ark. 2019) 569 S.W.3d 865, 870–872 and *Montgomery v. Air Serv Corporation, Inc.* (Wash.Ct.App. 2019) 446 P.3d 659, 664–666, in a footnote to support its argument that a defendant's forum activities unrelated to the plaintiff's specific claims do not justify the exercise of personal jurisdiction. While Avon's statement of law is accurate, neither of those cases holds that a product defect must be proven at the jurisdictional stage. (*Lawson*, at p. 871 [holding that in a negligence suit after an alleged slip-and-fall in defendant's Louisiana store, Arkansas did not have specific jurisdiction by virtue of the defendant's advertising and promotional activities in Arkansas]; *Montgomery*, at pp. 664–666 [finding no personal jurisdiction in Washington over the defendant in a lawsuit asserting the negligent provision of wheelchair services in a Dallas airport even though the defendant provided non-wheelchair services in a Seattle airport].)

whether the defendant is liable, but on whether the defendant has created sufficient minimum contacts with the forum such that requiring him to answer a lawsuit therein related to those activities does not offend " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.*, *supra*, 326 U.S. at p. 320.) "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [citation] the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them *liable to suit*.' " (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, italics added.)

Finally, while Avon accurately cites cases reciting the general rule that the merits of a dispute are not at issue at the jurisdictional stage, but proof of jurisdictional facts may at times overlap with the merits, none of the cases cited by Avon required proof of a product defect on a motion to quash where sale of the allegedly defective product created and formed the basis of the jurisdictional contact. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540; *Regents of University of New Mexico v. Superior Court* (1975) 52 Cal.App.3d 964, 970, fn. 7; *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 119.) Proof of jurisdictional facts may overlap with the merits, for example, where the plaintiff must make a showing of alter ego or merger in order to establish that a third party's contacts with the forum can be attributed to the defendant (*Sonora Diamond Corp.*, at p. 540; *Regents of University of New Mexico*, at p. 970, fn. 7) or where there must be some evidence that the defendant was involved in a conspiracy (*In re Automobile Antitrust Cases I & II*, at p. 119). Avon does not contend that any of the situations discussed in these cases is at issue.

In sum, neither *Bristol-Myers* nor any other authority cited by Avon requires proof of a product defect at the jurisdictional phase, and the trial court erred by requiring Bader to establish that the Avon perfumed talc powder used by Schmitz contained asbestos at this juncture.[7]

3. Bader's Claims Arise Out of or Relate to Avon's Forum Contacts

In addition to ruling that Bader had failed to establish the presence of asbestos in the talc powder products used by Schmitz and sold or marketed by Avon in California, the trial court found that Bader did not meet her burden as to relatedness because: 1) Avon's admission that it sold product nationally was insufficient to show relatedness; 2) there was no evidence that Avon shipped "so many units of any of the Avon talc scents" used by Schmitz to California personnel responsible for distribution to Schmitz's geographical area during the relevant time period; and 3) Schmitz's testimony went only to her connection to Avon's products, saying nothing about how those products got into California. While the court correctly found Avon's national product sales insufficient (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1781; *Jayone*, *supra*, 31 Cal.App.5th at p. 558 ["under *Bristol-Myers*, [defendant's] sales of products unconnected to the [allegedly defective product] are not relevant to determining whether the action is related to [defendant's] contacts with California"]), we disagree with the court's finding that Bader failed to satisfy her burden on the relatedness prong.

---

[7] Because the trial court erred in requiring Bader to establish that the Avon talc powder products that Schmitz used contained asbestos on the motion to quash, we do not address Bader's alternative arguments that she established that Avon's talc powder products contained asbestos or that the trial court erred in disallowing jurisdictional discovery aimed at adducing proof of asbestos.

Regarding Avon's California contacts, Bader has always contended, and Avon has never disputed, that Avon's sale of talc powder products through its sales representatives directly to Schmitz in California are contacts that Avon created with California that satisfy purposeful availment. Thus, we accept these to be Avon's relevant contacts.

On this record, the undisputed evidence demonstrates that Bader's claims arise out of or relate to Avon's California contacts. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1780.) The complaint alleges that the Avon talc powder products that Schmitz purchased and used were defective because they contained asbestos and caused Schmitz cancer. Bader established that Schmitz lived and worked in California all of her life and developed mesothelioma. Schmitz started using Avon's perfumed talc products because "Avon ladies" in the parent community left catalogs in the teachers' lounge and front office at the school where she worked. Schmitz identified a 1984 Avon catalog as representative of those she looked at and ordered from when she was a teacher. Schmitz ordered Avon perfumed talc powder about twice yearly for twenty years, and the products she bought all said "Avon." Bader also submitted evidence that, when asked whether Avon sold its cosmetic talc products in stores, Avon's corporate representative testified that Avon sells product through a direct sales model with non-employee sales representatives. "We are a direct sales company, and what that means is, we are—you know, you might hear, 'ding dong, Avon calling.' We are door to door. It is direct representative to consumer. So, it is a very personal relationship that [the Avon representative] has with her—with her—with her, you know, her customer. So, it's a direct sales model, which is a unique model." This evidence establishes that Avon used sales representatives to market and sell the products at issue directly to Schmitz in California. This

16

evidence establishes a sufficient " 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " (*Bristol-Myers, supra*, 137 S.Ct. at p. 1780.)[8]

Accordingly, we agree with Bader that the court erred in granting Avon's motion to quash.

*C. Costs*

In her consolidated appeal, Bader argues that, because the trial court improperly found that it lacked specific jurisdiction over Avon, Avon is not entitled to an award of costs as a prevailing party. (§ 1032, subd. (b) [a "prevailing party" is entitled to costs].) Avon agrees that the prevailing party costs award must be reversed upon reversal of the trial court's ruling on the

---

[8] The sliding scale approach is no longer good law, but cases after *Bristol-Myers* have found that *Vons'*s rejection of the " 'but for' " and " 'proximate cause' " tests in favor of a " 'substantial connection' " test for relatedness remain valid. (*Jayone, supra*, 31 Cal.App.5th at pp. 560–561 [finding a substantial nexus between the in-forum contacts and the wrongful death suit]; *Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1072 [endorsing *Vons'*s rejection of the " ' "proximate cause" ' " and " ' "but for" ' " test]; see *Halyard Health, Inc.*, at pp. 1081–1083 (dis. opn. of Rubin, J.) [the "substantial connection" test applies after *Bristol-Myers* although the sliding scale test is invalid]; *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 374, fn. 8 [*Vons'*s rejection of a proximate cause requirement for relatedness may still be viable after *Bristol-Myers*].) The United States Supreme Court may soon shed light on this issue in *Bandemer v. Ford Motor Co.* (Minn. 2019) 931 N.W.2d 744, cert. granted Jan. 17, 2020, No. 19-369, ___ U.S. ___, where the question presented is whether the "arise out of or relate to" requirement is met when none of the defendant's forum contacts caused the plaintiff's claims, "such that the plaintiff's claims would be the same even if the defendant had no forum contacts." (Docket for 19-369 <https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00369qp.pdf> [as of Sept. 28, 2020].) But we need not opine on the boundaries of the relatedness inquiry here because, under *Bristol-Myers*, there is a clear affiliation between the controversy, Avon's contacts, and the forum.

17

motion to quash.  Because we reverse the trial court's order on the motion to quash, we similarly reverse the order awarding Avon prevailing party costs.

## DISPOSITION

The trial court's order granting Avon's motion to quash service of summons and its order and judgment awarding costs to Avon as a prevailing party are reversed.  Bader shall recover her costs on appeal.

_____
BROWN, J.

WE CONCUR:


_____
STREETER, Acting P. J.


_____
TUCHER, J.

*Bader v. Avon Products, Inc.* (A157401, A158611)

Trial Court:                      Alameda County Superior Court

Trial Judge:                     Hon. Winifred Younge Smith

Counsel for Appellant:         Kazan, McClain, Satterley & Greenwood; Joseph D. Satterley, Denyse F. Clancy, and Michael T. Stewart

Counsel for Respondent:       Horvitz & Levy, LLP; Curt Cutting, Yen-Shyang Tseng: Hawkins Parnell & Young, LLP; Claire C. Weglarz, Macy M. Chan, and Elizabeth N. Branham

*Bader v. Avon Products, Inc.* (A157401, A158611)