# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHN E. MONTGOMERY and
SHARON R. PARCHIA, individually and
as Co-Personal Representatives of the
Estate of DR. ELINOR ELIZABETH
MONTGOMERY, and on behalf of the
beneficiaries of the estate to include:
DEBRA E. GRIFFIN, MICHAEL C.
MONTGOMERY, LYNDA R.
ESCALANTE, DANIEL E.
MONGTOMERY, STEPHEN K.
MONTGOMERY, and ENOCH P.
MONTGOMERY

                Respondents,

v.

AIR SERV CORPORATION, INC., a for-
profit corporation doing business in King
County, State of Washington; ABM
AVIATION, INC., d/b/a AIR SERV
CORPORATION and AIR SERV, a for-
profit corporation doing business in King
County, Washington, and CLARISSA
ESCALANTE, a single person residing
in Washington State,

                Petitioners,

DIVISION ONE

No. 78235-5-I

PUBLISHED OPINION

FILED: August 12, 2019

DWYER, J. — Following her death, Dr. Elinor Montgomery's estate filed a

wrongful death action against Air Serv Corporation and ABM Aviation Inc.

(collectively ABM)[1] alleging negligence in the provision of wheelchair services by ABM to Montgomery at the Dallas-Fort Worth (Dallas) airport in Texas.[2] On discretionary review, ABM seeks reversal of the trial court's ruling denying its motion to dismiss for lack of personal jurisdiction. According to ABM, the trial court erred by concluding that it had specific jurisdiction over ABM and that the Estate's claim arose from ABM's contacts with Washington given that Montgomery was injured in Texas and ABM provided wheelchair assistance services in Texas but not in Washington. We agree and now reverse.

I

ABM is an airline and airport services company incorporated in Georgia with its principal place of business in Georgia. ABM offers a variety of airline and airport services, including wheelchair assistance, by contracting with airlines and airports. With respect to wheelchair assistance, passengers requiring such services request wheelchair assistance directly from their airline. If ABM has a contract with that airline to provide such services at the airport in which the passenger requires wheelchair assistance, the airline will then request wheelchair assistance from ABM on the customer's behalf.

ABM has affiliate locations in numerous airports, including in Dallas and in Seattle (SeaTac). In July 2015, however, ABM did not provide wheelchair

---

[1] The parties acknowledge that Air Serv Corporation and ABM Aviation Inc. are the same company. The record does not provide a clear explanation as to how and when this became so.

[2] The complaint also sets forth a tort survival action seeking recompense of medical expenses and general damages, claims brought by Montgomery's surviving relatives individually for "negligent infliction of emotional distress, mental anguish, and loss of love and companionship," and claims brought by Montgomery's children individually for "loss of the parental relationship with their mother." All of these claims arise from ABM's alleged negligence in the provision of wheelchair assistance services to Montgomery. For purposes of this opinion, we refer to all plaintiffs as the "Estate" and all claims as the "claim."

2

assistance services in the SeaTac Airport but, rather, provided janitorial, cabin cleaning, and baggage services.

Sharon Parchia, Montgomery's daughter, purchased a ticket from Alaska Airlines for Montgomery to travel from SeaTac to Dallas in July 2015.[3] Parchia utilized Alaska Airlines' website to purchase the ticket and, at the time of the booking, checked a box on the website to request wheelchair assistance for Montgomery for both her departure from SeaTac and her arrival in Dallas. The website did not identify or offer any suggestion or reference to the company or companies that would provide the wheelchair assistance. At no time did Parchia or Montgomery contact ABM during the booking process.

On July 29, 2015, Montgomery's flight arrived at the Dallas airport and ABM provided Montgomery with wheelchair assistance services. The Estate alleges that during or immediately following the provision of these services, Montgomery sustained injuries that ultimately led to her death. Thereafter, the Estate filed its claim in King County Superior Court against ABM, alleging that negligence during the provision of wheelchair assistance services in Texas caused Montgomery's death.[4] The complaint alleges that jurisdiction over ABM is proper because "at all times relevant and material hereto" ABM was "doing business within King County, Washington, . . . as well as other locations in Washington State."

Subsequently, ABM filed a motion to dismiss for lack of personal

---

[3] Montgomery ultimately missed her originally scheduled Alaska Airlines flight and was rebooked on an American Airlines flight for the following day.

[4] The Estate also brought suit against Montgomery's granddaughter, Clarissa Escalante, alleging negligence for failing to adequately escort her grandmother through the Dallas airport.

jurisdiction. After hearing oral argument, the trial court denied the motion. During the hearing, the trial court concluded that ABM had purposefully availed itself of the privilege of conducting business in Washington and that the Estate's claim was sufficiently connected to ABM's contacts with Washington to subject ABM to the jurisdiction of Washington courts. Although the trial court considered the connection between the Estate's claim and the forum to be "a little bit tenuous," it nevertheless concluded, after discussing the extent of ABM's non-wheelchair-assistance-related services, that as long as there was some connection to ABM's acts or transactions in Washington, jurisdiction was proper, even if that connection was "fairly tenuous."

ABM then moved this court for discretionary review, asserting that review was warranted pursuant to RAP 2.3(b)(1) because the trial court's denial of its motion to dismiss constituted an obvious error rendering further proceedings useless.[5] Our commissioner ruled that the trial court's decision appeared inconsistent with recent case law from the United States Supreme Court concerning whether claims have arisen from a nonresident defendant's contacts with a forum state and granted review.

II

ABM contends that the trial court erred by concluding that the superior court had specific personal jurisdiction over it and denying its CR 12(b)(2) motion

---

[5] RAP 2.3(b)(1) provides:
   **(b) Considerations Governing Acceptance of Review.** Except as provided in section (d), discretionary review may be accepted only in the following circumstances:
      (1) The superior court has committed an obvious error which would render further proceedings useless.

to dismiss for lack of personal jurisdiction. This is so, ABM asserts, because the Estate's claim does not arise out of, or relate to, ABM's contacts with Washington. In response, the Estate asserts that ABM purposefully availed itself of the privilege of conducting business in Washington by entering into contracts with airlines to provide wheelchair services to Washington residents in Texas and that the Estate's claim arose from those contracts. ABM has the better argument.

A

We review de novo the denial of a motion to dismiss for lack of personal jurisdiction. State v. LG Elecs., Inc., 186 Wn.2d 169, 176, 375 P.3d 1035 (2016). "When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, the plaintiff's burden is only that of a prima facie showing of jurisdiction." LG Elecs., 186 Wn.2d at 176. Even when the trial court considers matters outside the pleadings, we treat the allegations in the complaint as established for purposes of determining jurisdiction. State v. LG Elecs., Inc., 185 Wn. App. 394, 406, 341 P.3d 346 (2015) (quoting Freestone Capital Partners LP v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 654, 230 P.3d 625 (2010)), aff'd, 186 Wn.2d 169 (2016). For matters outside the pleadings, we draw reasonable inferences in the light favorable to the nonmoving party. State v. AU Optronics Corp., 180 Wn. App. 903, 912, 328 P.3d 919 (2014).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923, 131 S. Ct.

2846, 180 L. Ed. 2d 796 (2011); U.S. CONST. amend. XIV, § 1. "Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists in Washington over nonresident defendants and foreign corporations as long as it complies with federal due process." Noll v. Am. Biltrite Inc., 188 Wn.2d 402, 411, 395 P.3d 1021 (2017). Thus, Washington courts may exercise personal jurisdiction over a nonresident defendant so long as: (1) purposeful minimum contacts exist between the defendant and the forum state, (2) the plaintiff's injuries arise out of or relate to those minimum contacts, and (3) the exercise of jurisdiction is consistent with notions of fair play and substantial justice. LG Elecs., 186 Wn.2d at 176-77.

RCW 4.28.185(1) sets forth a list of acts that defendants may perform to submit themselves to the jurisdiction of Washington courts:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of said acts:
> (a) The transaction of any business *within this state*;
> (b) The commission of a tortious act *within this state*;
> (c) The ownership, use, or possession of any property whether real or personal situated in this state;
> (d) Contracting to insure any person, property, or risk located within this state at the time of contracting;
> (e) The act of sexual intercourse within this state with respect to which a child may have been conceived;
> (f) Living in a marital relationship within this state notwithstanding subsequent departure from this state, as to all proceedings authorized by chapter 26.09 RCW, so long as the petitioning party has continued to reside in this state or has continued to be a member of the armed forces stationed in this state.

(Emphasis added.) Washington courts have personal jurisdiction over nonresident defendants for only those causes of action arising from the acts listed in RCW 4.28.185(1). RCW 4.28.185(3).

Contingent on the particular facts and claims in a case, Washington courts may possess either general or specific personal jurisdiction over a defendant corporation. Noll, 188 Wn.2d at 412. A state court has general jurisdiction to decide any claim against a defendant corporation when the corporation's contacts with the state are so substantial that it is essentially at home in the forum state.[6] Goodyear, 564 U.S. at 919. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Co. v. Superior Court of Cal., _ U.S. _, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017). A defendant corporation is at home in the state of its incorporation and the state of its principal place of business. BNSF Ry. v. Tyrrell, _ U.S. _, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017). Additionally, in truly exceptional cases, a corporation's operations in a state may be of such a nature as to make it essentially at home therein even though the state is neither its state of incorporation nor its principal place of business.[7] Tyrrell, 137 S. Ct. at 1558. Here, the Estate's complaint

---

[6] "General jurisdiction" is also referred to by the United States Supreme Court as "all-purpose" jurisdiction. Bristol-Myers Squibb Co. v. Superior Court of Cal., _U.S._, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017).

[7] In only one case has the Supreme Court found this test satisfied. During World War II, a company headquartered in the Philippines transferred its headquarters' operations to Ohio, in order to avoid the Japanese military occupation of the Philippines. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-48, 72 S. Ct. 413, 96 L. Ed. 485 (1952). During World War II, the Court held, the company was "at home" in Ohio. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 n.11, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ("Ohio was the corporation's principal, if temporary, place of business."); Perkins, 342 U.S. at 448 ("[H]e carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company.").

alleges that ABM conducted business in Washington. However, the Estate does not claim that Washington courts have general jurisdiction over ABM.[8] Thus, we must determine whether Washington courts have specific jurisdiction over ABM in this case.

A state court may also exercise personal jurisdiction over a corporate defendant based on the defendant's claim-specific contacts with the forum state. This is called specific jurisdiction.[9] Noll, 188 Wn.2d at 412. For a state court to exercise specific jurisdiction, there must be a connection between the forum state and the controversy. Bristol-Myers Squibb, 137 S. Ct. at 1781. This minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside in the forum state. Walden v. Fiore, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). Additionally, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Walden, 571 U.S. 277 at 284 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). A plaintiff's or a third party's contacts with a forum cannot be "decisive in determining whether the defendant's due process rights are violated." Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980).

The United States Supreme Court most recently analyzed the requirements of specific personal jurisdiction in Bristol-Myers Squibb. In that

---

[8] It is undisputed that ABM is incorporated in Georgia and its principal place of business is in Georgia. Accordingly, Washington courts do not have general personal jurisdiction over ABM. Tyrrell, 137 S. Ct. at 1558.

[9] The United States Supreme Court sometimes refers to "specific jurisdiction" as "case-linked" jurisdiction. Bristol-Myers Squibb, 137 S. Ct. at 1780.

litigation, the California Supreme Court adopted a "sliding scale" approach to specific jurisdiction and ruled that California courts had specific jurisdiction over Bristol-Myers Squibb in a case concerning injuries allegedly sustained from the consumption of Plavix, a drug produced and sold by Bristol-Myers Squibb. Bristol-Myers Squibb, 137 S. Ct. at 1778-79. According to the United States Supreme Court, "[u]nder the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." Bristol-Myers Squibb, 137 S. Ct. at 1781. The California Supreme Court's ruling was not unanimous, and the dissenters accused the majority of "expand[ing] specific jurisdiction to the point that, for a large category of defendants, it becomes indistinguishable from general jurisdiction." Bristol-Myers Squibb Co. v. Superior Court, 1 Cal. 5th 783, 816, 206 Cal. Rptr. 3d 636, 377 P.3d 874 (2016) (Werdegar, J., dissenting).

The United States Supreme Court reversed, strongly rebuking the California Supreme Court for its application of the "sliding scale" approach. Bristol-Myers Squibb, 137 S. Ct. at 1781. The Court explained that specific jurisdiction requires that there be "'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb, 137 S. Ct. at 1780 (alteration in original) (quoting Goodyear, 564 U.S. at 919). The Court further explained that a corporation's continuous activity within a state is irrelevant to specific jurisdiction if there is no adequate link between that activity and the claim made in the case.

9

<u>Bristol-Meyers Squibb</u>, 137 S. Ct. at 1781.

ABM contends that the trial court herein erred by concluding that it had specific jurisdiction over ABM. This is so, ABM contends, because there was no link between the claim made in this case and ABM's contacts with Washington. We agree.

The pertinent facts of this case are not disputed and demonstrate that the Estate's claim did not arise from ABM's contacts with Washington. It is undisputed that ABM had contacts with Washington at the time of Montgomery's injuries because it had contracts with airlines to perform janitorial, cabin cleaning, and baggage services at SeaTac. But it is also undisputed that ABM did not provide any wheelchair services at SeaTac and that it only provided wheelchair services to Montgomery in Texas.

The trial court's ruling appears to have implicitly adopted the sliding scale approach rejected by the United States Supreme Court in <u>Bristol-Myers Squibb</u>. It is clear from the record that the trial court considered the connection between the Estate's claim and the forum to be "a little bit tenuous." Nevertheless, the trial court concluded, after discussing ABM's non-wheelchair-assistance-related services, that as long as ABM was transacting business in Washington, and Parchia was in Washington when she requested that wheelchair services be provided to Montgomery in Texas, personal jurisdiction was proper, even if that connection was "fairly tenuous." This generous approach to specific jurisdiction—giving heed to the amount of nonrelated business conducted in the forum to compensate for the necessary "case-linked" connection between the tort

and the forum—was expressly rejected by the Bristol-Myers Squibb Court. 137 S. Ct. at 1781.

While it is undisputed that ABM conducted some business within Washington, it is not sufficient, for purposes of establishing specific jurisdiction, that ABM conducted business activities in Washington unrelated to the provision of wheelchair services when it is from the allegedly negligent provision of such services in Texas that the Estate's claim arose. See Bristol-Myers Squibb, 137 S. Ct. at 1781 ("Nor is it sufficient—or even relevant—that [Bristol-Myers Squibb] conducted research in California on matters unrelated to Plavix. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). Specific jurisdiction is not flexible: a claim must arise from the nonresident defendant's contacts with the forum state regardless of how many (or how few) contacts the nonresident defendant has with the forum state. Bristol-Myers Squibb, 137 S. Ct. at 1781. Because the Estate's claim did not arise from ABM's contacts with Washington, Washington courts do not have specific personal jurisdiction over ABM for the claim alleged herein.

B

The Estate contends that its claim arose from ABM's contacts with Washington through the third party arrangement ABM has with airlines to provide wheelchair services in Dallas to Washington residents who fly to Texas. Essentially, the Estate asserts (1) that ABM purposefully availed itself of the privilege of doing business in Washington by contracting with airlines to provide wheelchair services to Washington residents in Texas, and (2) that

Montgomery's injuries arose from those contracts and, therefore, arose from ABM's contacts with Washington. This argument is off the mark.

First, RCW 4.28.185 does not permit Washington courts to exercise jurisdiction over nonresident defendants for business they conduct in other states. RCW 4.28.185(1)(a) specifically requires that jurisdiction over nonresident defendants premised on business transactions must be premised on business transactions *made within Washington*. The Estate's assertion of jurisdiction is premised on a contract to provide services *in Texas*. That does not meet the requirements of Washington's long-arm statute.

Second, the Estate's assertion evinces a misunderstanding of that which constitutes purposeful availment. The principal inquiry for whether a corporation has purposely availed itself of the privilege of conducting business activities in the forum state is "whether the defendant's activities manifest an intention to submit to the power of a sovereign." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 882, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011). This analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 571 U.S. at 285. The necessary contact cannot be created by the actions of the plaintiff or a third party or by the "'random, fortuitous, or attenuated' contacts [the defendant] makes by interacting with other persons affiliated with the State." Walden, 571 U.S. at 286 (quoting Burger King Corp., 471 U.S. at 475).

For example, in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), the United States Supreme Court

12

concluded that the state courts of Oklahoma could not exercise specific personal jurisdiction over World-Wide Volkswagen Corp. and other corporate defendants. Therein, the Court explained that "if the sale of a product of a manufacturer or distributor . . . arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product *in other States*, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise *has there been* the source of injury to its owner or to others." World-Wide Volkswagen Corp., 444 U.S. at 297 (emphasis added). The Court further explained, however, that World-Wide Volkswagen Corp. and other corporate defendants did not carry on any "activity whatsoever in Oklahoma" and the defendant's contact with Oklahoma was due only to the "fortuitous circumstance that a single Audi automobile . . . happened to suffer an accident while passing through Oklahoma." World-Wide Volkswagen Corp., 444 U.S. at 295. The Court concluded that this "isolated occurrence" and "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" World-Wide Volkswagen Corp., 444 U.S. at 295, 298 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).

The Estate asserts that ABM purposefully availed itself of the privilege of doing business in Washington by entering into contracts with airlines to provide wheelchair services to Washington residents in Texas. This is not sufficient to establish case-linked personal jurisdiction. Providing services in Texas does not manifest an intention to submit to the jurisdiction of Washington courts. And the

presence of third parties in Washington cannot substitute for the absence of a link between the forum and the defendant's wrongful act that gave rise to the claim.

The trial court erred when it denied ABM's motion to dismiss for lack of personal jurisdiction. We therefore reverse and remand for dismissal, without prejudice, of all claims against ABM.

Reversed.

WE CONCUR: