## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARCUS DUELL, an individual, | No. 83424-0-I |
| Plaintiff, | |
| v. | DIVISION ONE |
| ALASKA AIRLINES, INC., a Delaware Corporation; PENINSULA AVIATION SERVICES, INC., doing business as PenAir, a Delaware corporation; | PUBLISHED OPINION |
| Petitioners, | |
| DOES 1 through 20, | |
| Defendants, | |
| ———————————————— | |
| ERIN OLTMAN, individually and as Personal Representative of the ESTATE OF DAVID OLTMAN, and on behalf of REECE OLTMAN and EVAN OLTMAN, | |
| Respondents, | |
| v. | |
| ALASKA AIR GROUP, INC., and ALASKA AIRLINES, INC., | |
| Petitioners. | |

COBURN, J. — The issue before us is whether a Washington court can exercise personal jurisdiction over Peninsula Airways, Inc. (PenAir), a Delaware corporation

Citations and pincites are based on the Westlaw online version of the cited material.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

headquartered in Alaska. PenAir depended exclusively on Alaska Airlines, Inc. (Alaska Airlines), a Washington based corporation, to market and sell seats on PenAir flights between Anchorage and Dutch Harbor, Alaska. David Oltman purchased from Alaska Airlines a trip from Wenatchee, Washington to Dutch Harbor. On the third leg of his trip, the PenAir flight crashed while landing, causing his injuries and eventual death. His family sued PenAir in King County Superior Court alleging wrongful death. The court denied PenAir's motion to dismiss for lack of personal jurisdiction. We affirm.

FACTS

Alaska Airlines' corporate headquarters and principal place of business is in SeaTac, Washington. PenAir[1] was a Delaware corporation headquartered in Anchorage. It did not own any property in Washington or operate any flights to or from Washington. In December 2018, PenAir and Alaska Airlines entered into a capacity purchase agreement (CPA). Under the CPA, PenAir operated flights between Anchorage and Dutch Harbor as "Alaska Airlines" flights. All of the flights were exclusively marketed and sold by Alaska Airlines and the purchase confirmation indicated that all flights were Alaska Airlines flight numbers. The CPA provided Alaska Airlines with a detailed level of control over the operations of PenAir, the pricing and marketing of the flights, the schedule of the flights, the use of Alaska Airlines branded passenger/cargo materials, and the rights to approve the selection of executive level employees of PenAir. Alaska Airlines also retained the right to control what safety

---

[1] Similar to the trial court, we do not consider a declaration from Orin Seybert, former president of Peninsula Airways, Inc. That company went bankrupt in 2018 and was a different legal entity from PenAir, which incorporated in 2018 and purchased Peninsula Airways' assets.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

standards PenAir was required to adhere to in the operation of the Dutch Harbor route.

The CPA also had a choice of law provision:

> This CPA shall be governed by and interpreted in accordance with the laws of the State of Washington (without regard to principles of conflicts of law) including all matters of construction, validity and performance.

In October 2019, Oltman, a Washington resident, purchased from Alaska Airlines a trip from Wenatchee, Washington to Dutch Harbor, Alaska. Oltman purchased his tickets through Alaska Airlines' website directly from the airline. The trip had three legs. The first was from Wenatchee to Seattle, the second was from Seattle to Anchorage, and the third was from Anchorage to Dutch Harbor, a flight operated by PenAir. While landing in Dutch Harbor, the pilot was unable to stop on the runway, crashing into ballast rocks at the edge of the harbor. The left propeller struck one of the ballast rocks and sheared off, sending pieces and shrapnel into the fuselage. One or more of the propellers and/or the destroyed fuselage struck Oltman, causing injuries that eventually resulted in his death.

Oltman's family and estate (collectively the Oltmans) initially sued Alaska Airlines and later amended their complaint adding PenAir as a defendant. PenAir filed a CR 12(b)(2) motion to dismiss asserting that the trial court lacked personal jurisdiction over PenAir. The trial court denied the motion after hearing oral argument and considering pleadings without holding an evidentiary hearing. A commissioner of this court granted PenAir's request for discretionary review.[2]

---

[2] The Oltmans' case had been consolidated below with a complaint filed by Marcus Duell. While this appeal was pending as to both plaintiffs, a panel of this court granted PenAir's motion to voluntarily withdraw review as to Duell.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

DISCUSSION

This court reviews the denial of a motion to dismiss for lack of personal jurisdiction de novo. Sandhu Farm Inc., v. A&P Fruit Growers Ltd., No 83866-1-I, slip op. at 3 (Wash. Ct. App. Feb. 13, 2023), www.courts.wa.gov/opinions/pdf/838661.pdf. When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, the plaintiff's burden is only that of a prima facie showing of jurisdiction. State v. LG Elecs., Inc., 186 Wn.2d 169, 176, 375 P.3d 1035 (2016). This court treats the allegations in the complaint as established for purposes of determining jurisdiction. Montgomery v. Air Serv. Corp., 9 Wn. App. 2d 532, 538, 446 P.3d 659 (2019) (citations omitted).

"A court's exercise of personal jurisdiction over a nonresident defendant requires compliance with both the relevant state long-arm statute and the Fourteenth Amendment's due process clause." Downing v. Losvar, 21 Wn. App. 2d 635, 653, 507 P.3d 894 (2022) (citing Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)). "Because a state court's assertion of jurisdiction exposes defendants to the state's coercive power, personal jurisdiction falls within the parameters of the clause." Downing, 21 Wn. App. 2d at 655. The relevant portion of Washington's "long-arm" statute permits jurisdiction over:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of said acts:

> (a) The transaction of any business within this state[.]

4

83424-0-I/5

RCW 4.28.185(1)(a). "The Washington Supreme Court has consistently held that the state long-arm statute permits jurisdiction over foreign corporations to the extent permitted by the due process clause of the United States Constitution." Sandhu Farm, slip op. at 4 (citing Downing, 21 Wn. App. 2d at 654); Noll v. Am. Biltrite Inc., 188 Wn.2d 402, 411, 395 P.3d 1021 (2017); Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989)).

The Fourteenth Amendment's due process clause limits a state court's power to exercise jurisdiction over a defendant. Ford Motor Co. v. Montana Eighth Jud. Dist., 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021) (citing Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "The canonical decision in this area remains International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)." Ford, 141 S. Ct. at 1024.

> There, the Court held that a tribunal's authority depends on the defendant's having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." In giving content to that formulation, the Court has long focused on the nature and extent of "the defendant's relationship to the forum State."

Id. (quoting Int'l Shoe, 326 U.S. at 316-17); Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 256, 262, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017).

Courts recognize two kinds of personal jurisdiction: general and specific. Ford, 141 S. Ct. at 1024. "A state court has general jurisdiction to decide any claim against a defendant corporation when the corporation's contacts with the state are so substantial that it is essentially at home in the forum state." Montgomery, 9 Wn. App. 2d at 539 (citing Goodyear Dunlop Tires Operations v. Brown, 564 U.S. 915, 919, 131 S. Ct.

5

2846, 180 L. Ed. 2d 796 (2011)).  A corporation is at home in its place of incorporation and its principal place of business.  Ford, 141 S. Ct. at 1024; Daimler, 571 U.S. at 137.  The Oltmans assert that Washington has specific jurisdiction over PenAir.  Specific jurisdiction covers a narrower class of claims when a defendant maintains a less intimate connection with a state.  Downing, 21 Wn. App. 2d at 657 (citing Ford, 141 S. Ct. at 1024).

Since Int'l Shoe, the United States Supreme Court has revisited the contours of how specific jurisdiction can be met—most recently in its decision in Ford.  Ford, 141 S. Ct. at 1024; see Bristol-Myers Squibb, 137 S. Ct. at 1779; J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 882, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (plurality opinion); Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 109-13, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).  Additionally, following Int'l Shoe, our state Supreme Court and this court have also had opportunities to apply the most recent decision from the United States Supreme Court at that time.  See, e.g., LG Elecs., 186 Wn.2d at 176; Shute, 113 Wn.2d at 764; Montgomery, 9 Wn. App. 2d at 535.  Following Ford, this court has twice analyzed specific personal jurisdiction.  Sandhu Farm, slip op. at 1; Downing, 21 Wn. App. 2d at 678.

The parties attempt to frame this case as whether the facts more closely align with the facts in <u>Shute</u>[3] or <u>Montgomery</u>.[4] However, in <u>Shute</u>, decided 34 years ago, the court adopted a "but for" test that has since been clarified by the United States Supreme Court. <u>Shute</u>, 113 Wn.2d at 770; <u>see</u> <u>Ford</u>, 141 S. Ct. at 1026 (recognizing that "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do"). Though <u>Montgomery</u> was more recently decided, its holding was based on a premise in <u>McIntyre</u>, a plurality decision. <u>McIntyre</u>, 564 U.S. at 882. That plurality opinion held that the principal inquiry for whether a corporation has purposefully availed itself of the privilege of conducting business activities in the forum state was "whether the defendant's activities manifest an

---

[3] In <u>Shute</u>, a Washington resident was injured on a cruise ship in international waters and brought suit against the cruise operator, a Panamanian corporation with its principal place of business in Florida. <u>Shute</u>, 113 Wn.2d at 764. The ship embarked from Los Angeles to Mexico. <u>Id.</u> at 765. Carnival's only contacts with Washington were advertisements in Washington newspapers, promotional materials provided to Washington travel agencies, and seminars conducted by Carnival's personnel for travel agencies in promotion of its cruises. <u>Id.</u> at 766. The tickets issued by Carnival contained contract clauses designating Florida as the forum for any litigation. <u>Id.</u> at 766. The Washington State Supreme Court held that "Carnival's solicitation of business in this state was purposefully directed at Washington residents." <u>Id.</u> at 768.

[4] <u>Montgomery</u> involved a wrongful death suit filed in Washington against Air Serv Corporation and ABM Aviation Inc. (collectively ABM), a Georgia-based corporation. <u>Montgomery</u>, 9 Wn. App. 2d at 535. ABM offered a variety of airport services, including wheelchair assistance, by contracting with airlines and airports. <u>Id.</u> Montgomery's daughter purchased a ticket from Alaska Airlines for Montgomery to travel from SeaTac airport to Dallas using Alaska Airlines' website, checking a box for wheelchair assistance in SeaTac and Dallas. <u>Id.</u> at 535-36. The website did not note what company would provide the wheelchair assistance. <u>Id.</u> ABM did not provide wheelchair assistance services in SeaTac airport, but only provided janitorial, cabin cleaning, and baggage services. <u>Id.</u> at 535. After missing her Alaska Airlines flight, Montgomery flew on American Airlines to Dallas, where ABM provided Montgomery with wheelchair assistance services resulting in injuries leading to her death. <u>Id.</u> at 535 n.3. This court held that "a contract to provide services in Texas" was "not sufficient to establish case-linked personal jurisdiction," reasoning that "[p]roviding services in Texas does not manifest an intention to submit to the jurisdiction of Washington courts." <u>Id.</u> at 544-45.

7

83424-0-I/8

intention to submit to the power of a sovereign." Montgomery, 9 Wn. App. 2d at 544 (quoting McIntyre, 564 U.S. at 882).

As the Washington Supreme Court observed in LG Electronics, the United States Supreme Court issued fractured opinions in McIntyre in its attempt to clarify the fractured opinions from its earlier decision in Asahi regarding a stream of commerce theory as applied to a minimum contacts analysis. LG Elecs., 186 Wn.2d at 178-80. Notably, neither McIntyre nor the "stream of commerce theory" is mentioned in Ford. And as we noted in Sandhu Farm, the Washington Supreme Court has not addressed personal jurisdiction since Ford was decided. Sandhu Farm, slip op. at 1.

Because we look to federal law to determine personal jurisdiction, we review this case in light of Ford. Sandhu Farm, slip op. at 6; Downing, 21 Wn. App. 2d at 678. Under Ford, for specific jurisdiction, the defendant must (1) purposefully avail itself of the privilege of conducting activities within the forum state, and (2) the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. Sandhu Farm, slip op. at 5 (citing Ford, 141 S. Ct. at 1024-25).

Division Three in Downing also considered the "fairness and reasonableness" of the assertion of personal jurisdiction as a third "element." Downing, 21 Wn. App. 2d at 659 (citing Burger King, 471 U.S. at 476). In Downing, Textron Aviation argued that because the parties were pursuing their claims in courts that had uncontested general jurisdiction over the company, Washington should not exercise jurisdiction as it would not be reasonable. Downing, 21 Wn. App. 2d at 679-80. However, the Ford court does not present the analysis for specific jurisdiction as a three-part test or a three-element analysis. Instead, it observed that the specific jurisdiction "rules" "reflect two sets of

8

values—treating defendants fairly and protecting 'interstate federalism.'" 141 S. Ct. at 1025 (citing World-Wide Volkswagen, 444 U. S. at 293). The Ford Court discussed principles of "interstate federalism" in response to Ford proposing a rule that would make the States of first sale the most likely forum in a product-liability case involving automobiles. Id. at 1030. Regardless, in the instant case neither party in their briefs raised or argued fairness and reasonableness or interstate federalism as a separate issue not already reflected in the specific jurisdiction analysis. "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). Because the parties did not raise a separate concern outside of whether PenAir purposefully availed itself of the privilege of conducting activities within Washington and whether the Oltmans' claims arise out of or relate to PenAir's contacts with Washington, we restrict our review to matters raised and briefed.

PenAir maintains that it did not purposefully avail itself because it did not own any property in Washington, employ any of its citizens, did not operate any flights to or from Washington, and did not conduct any operations in Washington. It also contends it took no actions directed toward Washington and that any actions directed toward Washington residents occurred within Alaska. It argues there is no evidence that it advertised in Washington or otherwise solicited business from Washington residents. It also argues that it was Alaska Airlines, not PenAir, that sold tickets for the flights from Anchorage to Dutch Harbor, and that PenAir merely operated the flights under Alaska Airlines flight numbers.

9

The Oltmans counter that PenAir purposefully availed itself of the privilege of conducting activities within Washington by contracting with Alaska Airlines to exclusively price, market, and sell its flights from Anchorage to Dutch Harbor on behalf of PenAir. The Oltmans further argue that PenAir's negotiation of the CPA choosing Washington law is direct evidence that it availed itself of Washington law and can reasonably expect to be haled into court here.

We agree with the Oltmans.

The defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." Ford, 141 S. Ct. at 1024 (alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). The contacts between the non-resident defendant and the forum state must show that the defendant deliberately "reached out beyond" its home— by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Ford, 141 S. Ct. at 1025 (alteration in original) (quoting Walden v. Fiore, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." Ford, 141 S. Ct. at 1025 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). Jurisdiction may not be avoided merely because the defendant did not physically enter the forum state.

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents

10

of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Burger King, 471 U.S. at 476 (quoting Keeton, 465 U.S. at 774).

PenAir does not dispute the terms of the CPA, but ignores the fact that through the CPA it reached beyond its home of Alaska to exploit a market in Washington by relying on Washington-based Alaska Airlines to exclusively market and sell PenAir's flights to Dutch Harbor. PenAir fails to explain how the CPA that provides for Alaska Airlines to market on behalf of PenAir is materially different than PenAir marketing in Washington itself. PenAir relied on Alaska Airlines' marketing to fill its flights to Dutch Harbor with the understanding that Alaska Airlines is a Washington corporation with its principal place of business in Washington.

PenAir also contends that the choice-of-law provision is not relevant because it is not a forum-selection clause and applies to disputes between itself and Alaska Airlines, not third parties.

In Burger King, the United States Supreme Court criticized the Court of Appeals for giving insufficient weight to a choice-of-law provision which stated,

> This Agreement shall become valid when executed and accepted by BKC at Miami, Florida; it shall be deemed made and entered into in the State of Florida and shall be governed and construed under and in accordance with the laws of the State of Florida. The choice of law designation does not require that all suits concerning this Agreement be filed in Florida.

Burger King, 471 U.S. at 481. The United States Supreme Court noted that the Court of Appeals in Burger King reasoned that "choice-of-law provisions are irrelevant to the question of personal jurisdiction, relying on Hanson for the proposition that 'the center of gravity for choice-of-law purposes does not necessarily confer the sovereign prerogative to assert jurisdiction.'" Burger King, 471 U.S. at 481 (quoting Burger King Corp. v.

11

MacShara, 724 F.2d 1505, 1511-1512, n.10 (1984)).  The United States Supreme Court observed that Hanson and subsequent cases have "emphasized that choice-of-law analysis—which focuses on all elements of a transaction, and not simply on the defendant's conduct—is distinct from minimum-contacts jurisdictional analysis—which focuses at the threshold solely on the defendant's purposeful connection to the forum." Burger King, 471 U.S. at 481-82 (citing Hanson, 357 U.S. at 253-54).  However, the Burger King Court explained that "[n]othing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes."  Id.  The court acknowledged that "such a provision standing alone would be insufficient to confer jurisdiction," but "when combined with the 20-year interdependent relationship [defendant] established with Burger King's Miami headquarters, it reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."  Id.

In the instant case, the choice-of-law provision indicated that Washington law would govern all matters of construction, validity and *performance*.  The CPA established that PenAir would operate flights based upon the schedule established from time to time by Alaska Airlines and provided to PenAir subject to reasonable approval of PenAir to ensure safety and reliability of flights into Dutch Harbor during challenging weather and minimal daylight conditions.  The Oltmans allege in their complaint that, on approach to the airport, PenAir pilots encountered tailwinds that exceeded the performance of the aircraft, but that the crew attempted to land regardless.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The consideration of the choice-of-law provision under the circumstances of this case is an example of an act by which PenAir invoked the benefits and protections of Washington law to govern its agreement and have Alaska Airlines exclusively market and sell its flights to Dutch Harbor.  By focusing on the fact that the CPA is between PenAir and Alaska Airlines and not PenAir and Oltman, PenAir conflates the secondary inquiry related to the connection between the plaintiffs' claims and PenAir's contacts with the first inquiry of whether PenAir purposefully availed itself by examining its own conduct in making contacts with Washington.

While the choice-of-law provision standing alone would be insufficient to establish specific personal jurisdiction, when combined with PenAir's agreement to operate flights sold exclusively by Washington-based Alaska Airlines, PenAir's choice of Washington law to govern the CPA supports that it purposefully availed itself of the privilege of conducting activities within Washington.

When a company exercises the privilege of conducting activities in a state, thus enjoying the benefits and protection of its laws, the state is able to then hold the company accountable for related misconduct.  <u>Ford</u>, 141 S. Ct. at 1025 (citing <u>Int'l Shoe</u>, 326 U.S. at 319).

We next examine whether the Oltmans' claims arise out of or relate to PenAir's contacts with Washington.

Even when a defendant has minimal contacts with the forum state, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum.  <u>Sandhu Farm</u>, slip op. at 5 (citing <u>Ford</u>, 141 S. Ct. at 1024-25); <u>see</u> <u>Downing</u>, 21 Wn. App. 2d at 674-75.  "Even regularly occurring sales of a product in a state do not justify the

exercise of jurisdiction over a claim unrelated to those sales." Id. at 673 (citing Bristol-Myers Squibb, 137 S. Ct. at 1781).

The Ford Court explained the difference between the "must arise out of" and "relate to" standard:

> The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

Ford, 141 S. Ct. at 1026.

PenAir provides little argument other than a conclusory statement that any suggested link between the claims and the CPA is too attenuated. We disagree. Oltman purchased his trip from Alaska Airlines. His flights were all under the name of Alaska Airlines, but Oltman ended up on the PenAir flight because of PenAir's CPA with Alaska Airlines. This is the same CPA, governed by Washington law, in which Alaska Airlines retained the right to control what safety standards PenAir was required to adhere to in the operation of the Dutch Harbor route, and in which Alaska Airlines established the flight schedule subject to PenAir's reasonable approval to ensure safety and reliability of flights into Dutch Harbor during challenging weather and minimal

14

daylight conditions. The Oltmans' claims relate to PenAir's contacts with Washington.

We affirm.

_Cohen, J._

WE CONCUR:

_Chung, J._                    _Hazel, ACJ_