Justice ALITO delivered the opinion of the Court.
More than 600 plaintiffs, most of whom are not California residents, filed this civil action in a California state court against Bristol-Myers Squibb Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix. The California Supreme Court held that the California courts have specific jurisdiction to entertain the nonresidents' claims. We now reverse.
I
A
BMS, a large pharmaceutical company, is incorporated in Delaware and headquartered in New York, and it maintains substantial *1778 operations in both New York and New Jersey. 1 Cal.5th 783, 790, 206 Cal.Rptr.3d 636, 377 P.3d 874, 879 (2016). Over 50 percent of BMS's work force in the United States is employed in those two States. Ibid.
BMS also engages in business activities in other jurisdictions, including California. Five of the company's research and laboratory facilities, which employ a total of around 160 employees, are located there. Ibid. BMS also employs about 250 sales representatives in California and maintains a small state-government advocacy office in Sacramento. Ibid.
One of the pharmaceuticals that BMS manufactures and sells is Plavix, a prescription drug that thins the blood and inhibits blood clotting. BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California. Ibid. BMS instead engaged in all of these activities in either New York or New Jersey. Ibid. But BMS does sell Plavix in California. Between 2006 and 2012, it sold almost 187 million Plavix pills in the State and took in more than $900 million from those sales. 1 Cal.5th, at 790-791, 206 Cal.Rptr.3d 636, 377 P.3d, at 879. This amounts to a little over one percent of the company's nationwide sales revenue. Id., at 790, 206 Cal.Rptr.3d 636, 377 P.3d, at 879.
B
A group of plaintiffs-consisting of 86 California residents and 592 residents from 33 other States-filed eight separate complaints in California Superior Court, alleging that Plavix had damaged their health. Id., at 789, 206 Cal.Rptr.3d 636, 377 P.3d, at 878. All the complaints asserted 13 claims under California law, including products liability, negligent misrepresentation, and misleading advertising claims. Ibid. The nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California.
Asserting lack of personal jurisdiction, BMS moved to quash service of summons on the nonresidents' claims, but the California Superior Court denied this motion, finding that the California courts had general jurisdiction over BMS "[b]ecause [it] engages in extensive activities in California." App. to Pet. for Cert. 150. BMS unsuccessfully petitioned the State Court of Appeal for a writ of mandate, but after our decision on general jurisdiction in Daimler AG v. Bauman, 571 U.S. ----, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), the California Supreme Court instructed the Court of Appeal "to vacate its order denying mandate and to issue an order to show cause why relief sought in the petition should not be granted." App. 9-10.
The Court of Appeal then changed its decision on the question of general jurisdiction. 228 Cal.App.4th 605, 175 Cal.Rptr.3d 412 (2014). Under Daimler, it held, general jurisdiction was clearly lacking, but it went on to find that the California courts had specific jurisdiction over the nonresidents' claims against BMS. 228 Cal.App.4th 605, 175 Cal.Rptr.3d, at 425-439.
The California Supreme Court affirmed. The court unanimously agreed with the Court of Appeal on the issue of general jurisdiction, but the court was divided on the question of specific jurisdiction. The majority applied a "sliding scale approach to specific jurisdiction." 1 Cal.5th, at 806, 206 Cal.Rptr.3d 636, 377 P.3d, at 889. Under this approach, "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." Ibid. (internal *1779 quotation marks omitted). Applying this test, the majority concluded that "BMS's extensive contacts with California" permitted the exercise of specific jurisdiction "based on a less direct connection between BMS's forum activities and plaintiffs' claims than might otherwise be required." Ibid . This attenuated requirement was met, the majority found, because the claims of the nonresidents were similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested). Id., at 803-806, 206 Cal.Rptr.3d 636, 377 P.3d, at 887-889. The court noted that "[b]oth the resident and nonresident plaintiffs' claims are based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product." Id., at 804, 206 Cal.Rptr.3d 636, 377 P.3d, at 888. And while acknowledging that "there is no claim that Plavix itself was designed and developed in [BMS's California research facilities]," the court thought it significant that other research was done in the State. Ibid .
Three justices dissented. "The claims of ... nonresidents injured by their use of Plavix they purchased and used in other states," they wrote, "in no sense arise from BMS's marketing and sales of Plavix in California," and they found that the "mere similarity" of the residents' and nonresidents' claims was not enough. Id., at 819, 206 Cal.Rptr.3d 636, 377 P.3d, at 898 (opinion of Werdegar, J.). The dissent accused the majority of "expand[ing] specific jurisdiction to the point that, for a large category of defendants, it becomes indistinguishable from general jurisdiction." Id., at 816, 206 Cal.Rptr.3d 636, 377 P.3d, at 896.
We granted certiorari to decide whether the California courts' exercise of jurisdiction in this case violates the Due Process Clause of the Fourteenth Amendment. 580 U.S. ----, 137 S.Ct. 827, 196 L.Ed.2d 610 (2017).[1]
II
A
It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts. See, e.g., Daimler, supra, at ---- - ----, 134 S.Ct., at 753-757 ; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ; International Shoe Co. v. Washington, 326 U.S. 310, 316-317, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ; Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565 (1878). Because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power," it is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause," Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 918, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), which "limits the power of a state court to render a valid personal judgment against a nonresident defendant," World-Wide Volkswagen, supra, at 291, 100 S.Ct. 559. The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State. See Walden v. Fiore, 571 U.S. ----, ---- - ----, 134 S.Ct. 1115, 1121-1123, 188 L.Ed.2d 12 (2014) ; Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 806-807, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).
Since our seminal decision in International Shoe, our decisions have recognized *1780 two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. Goodyear, 564 U.S., at 919, 131 S.Ct. 2846. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id ., at 924, 131 S.Ct. 2846. A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State. Id., at 919, 131 S.Ct. 2846. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. Daimler, 571 U.S., at ----, 134 S.Ct., at 760.
Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, "the suit " must "aris[e] out of or relat[e] to the defendant's contacts with the forum ." Id., at ----, 134 S.Ct., at 754 (internal quotation marks omitted; emphasis added); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Ibid. (internal quotation marks omitted).
B
In determining whether personal jurisdiction is present, a court must consider a variety of interests. These include "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." Kulko v. Superior Court of Cal., City and County of San Francisco, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) ; see Daimler, supra, at ---- - ----, n. 20, 134 S.Ct., at 762, n. 20 ; Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ; World-Wide Volkswagen, 444 U.S., at 292, 100 S.Ct. 559. But the "primary concern" is "the burden on the defendant." Id., at 292, 100 S.Ct. 559. Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. As we have put it, restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State ... implie[s] a limitation on the sovereignty of all its sister States." World-Wide Volkswagen, 444 U.S., at 293, 100 S.Ct. 559. And at times, this federalism interest may be decisive. As we explained in World-Wide Volkswagen, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying *1781 its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." Id., at 294, 100 S.Ct. 559.
III
A
Our settled principles regarding specific jurisdiction control this case. In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Goodyear, 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. See id., at 931, n. 6, 131 S.Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").
For this reason, the California Supreme Court's "sliding scale approach" is difficult to square with our precedents. Under the California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction. For specific jurisdiction, a defendant's general connections with the forum are not enough. As we have said, "[a] corporation's 'continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' " Id., at 927, 131 S.Ct. 2846 (quoting International Shoe, 326 U.S., at 318, 66 S.Ct. 154 ).
The present case illustrates the danger of the California approach. The State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims. As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California-and allegedly sustained the same injuries as did the nonresidents-does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." Walden, 571 U.S., at ----, 134 S.Ct., at 1123. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. Nor is it sufficient-or even relevant-that BMS conducted research in California on matters unrelated to Plavix. What is needed-and what is missing here-is a connection between the forum and the specific claims at issue.
Our decision in Walden, supra, illustrates this requirement. In that case, Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. We held that the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada." Id., at ----, 134 S.Ct., at 1124. Because the "relevant conduct occurred *1782 entirely in Georgi[a] ... the mere fact that [this] conduct affected plaintiffs with connections to the forum State d [id] not suffice to authorize jurisdiction." Id., at ----, 134 S.Ct., at 1126 (emphasis added).
In today's case, the connection between the nonresidents' claims and the forum is even weaker. The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, as in Walden, all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction. See World-Wide Volkswagen, supra, at 295, 100 S.Ct. 559 (finding no personal jurisdiction in Oklahoma because the defendant "carr[ied] on no activity whatsoever in Oklahoma" and dismissing "the fortuitous circumstance that a single Audi automobile, sold [by defendants] in New York to New York residents, happened to suffer an accident while passing through Oklahoma" as an "isolated occurrence").
B
The nonresidents maintain that two of our cases support the decision below, but they misinterpret those precedents.
In Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), a New York resident sued Hustler in New Hampshire, claiming that she had been libeled in five issues of the magazine, which was distributed throughout the country, including in New Hampshire, where it sold 10,000 to 15,000 copies per month. Concluding that specific jurisdiction was present, we relied principally on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State. We noted that "[f]alse statements of fact harm both the subject of the falsehood and the readers of the statement." Id ., at 776, 104 S.Ct. 1473 (emphasis deleted). This factor amply distinguishes Keeton from the present case, for here the nonresidents' claims involve no harm in California and no harm to California residents.
The nonresident plaintiffs in this case point to our holding in Keeton that there was jurisdiction in New Hampshire to entertain the plaintiff's request for damages suffered outside the State, id., at 774, 104 S.Ct. 1473 but that holding concerned jurisdiction to determine the scope of a claim involving in-state injury and injury to residents of the State, not, as in this case, jurisdiction to entertain claims involving no in-state injury and no injury to residents of the forum State. Keeton held that there was jurisdiction in New Hampshire to consider the full measure of the plaintiff's claim, but whether she could actually recover out-of-state damages was a merits question governed by New Hampshire libel law. Id ., at 778, n. 9, 104 S.Ct. 1473.
The Court's decision in Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), which involved a class action filed in Kansas, is even less relevant. The Kansas court exercised personal jurisdiction over the claims of nonresident class members, and the defendant, Phillips Petroleum, argued that this violated the due process rights of these class members because they lacked minimum contacts with the State.[2] According to the defendant, the out-of-state class members should not have been kept in the case unless they affirmatively opted in, instead of merely failing to opt out after *1783 receiving notice. Id., at 812, 105 S.Ct. 2965.
Holding that there had been no due process violation, the Court explained that the authority of a State to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out-of-state defendant. Id., at 808-812, 105 S.Ct. 2965. Since Shutts concerned the due process rights of plaintiffs, it has no bearing on the question presented here.
Respondents nevertheless contend that Shutts supports their position because, in their words, it would be "absurd to believe that [this Court] would have reached the exact opposite result if the petitioner [Phillips] had only invoked its own due-process rights, rather than those of the non-resident plaintiffs." Brief for Respondents 28-29, n. 6 (emphasis deleted). But the fact remains that Phillips did not assert that Kansas improperly exercised personal jurisdiction over it, and the Court did not address that issue.[3] Indeed, the Court stated specifically that its "discussion of personal jurisdiction [did not] address class actions where the jurisdiction is asserted against a defendant class." Shutts, supra, at 812, n. 3, 105 S.Ct. 2965.
C
In a last ditch contention, respondents contend that BMS's "decision to contract with a California company [McKesson] to distribute [Plavix ] nationally" provides a sufficient basis for personal jurisdiction. Tr. of Oral Arg. 32. But as we have explained, "[t]he requirements of International Shoe ... must be met as to each defendant over whom a state court exercises jurisdiction." Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ; see Walden, 571 U.S., at ----, 134 S.Ct., at 1123 ("[A] defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction"). In this case, it is not alleged that BMS engaged in relevant acts together with McKesson in California. Nor is it alleged that BMS is derivatively liable for McKesson's conduct in California. And the nonresidents "have adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." 1 Cal.5th, at 815, 206 Cal.Rptr.3d 636, 377 P.3d, at 895 (Werdegar, J., dissenting) (emphasis deleted). See Tr. of Oral Arg. 33 ("It is impossible to trace a particular pill to a particular person.... It's not possible for us to track particularly to McKesson"). The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State.
IV
Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up. See Brief for Respondents 38-47. Our decision does not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS. BMS concedes that such suits could be brought in either New York or Delaware. See Brief for Petitioner 13. Alternatively, the plaintiffs who are residents of a particular State-for example, the 92 plaintiffs from Texas and the 71 from Ohio-could probably sue together in their home States. In addition, since our decision concerns the due process limits on the *1784 exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102, n. 5, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987).
* * *
The judgment of the California Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
It is so ordered.

California law provides that its courts may exercise jurisdiction "on any basis not inconsistent with the Constitution ... of the United States," Cal. Civ. Proc. Code Ann. § 410.10 (West 2004); see Daimler AG v. Bauman, 571 U.S. ----, ----, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014).

The Court held that the defendant had standing to argue that the Kansas court had improperly exercised personal jurisdiction over the claims of the out-of-state class members because that holding materially affected the defendant's own interests, specifically, the res judicata effect of an adverse judgment. 472 U.S., at 803-806, 105 S.Ct. 2965.

Petitioner speculates that Phillips did not invoke its own due process rights because it was believed at the time that the Kansas court had general jurisdiction. See Reply Brief 7, n. 1.