# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2210

_____

Lesa Benacquisto; Daniel Benacquisto; Richard Thoresen; Elizabeth Thoresen; Arnold Mork; Isabella Mork; Ronald Melchert; Susan Melchert, on behalf of themselves and all others similarly situated; Steven A. Creaturo; Paul Russell; Tyva Russell

*Plaintiff*s

Estate of Marjory Gail Thomas Osborn-Vincent

*Plaintiff - Appellant*

Richard Osborn, Personal Representative of the Estate of Marjory Gail Thomas Osborn-Vincent

*Movant - Appellant*

v.

American Express Financial Corporation, Sued as: American Express Financial Service Corp.; American Express Financial Advisors, Inc.; American Centurion Life Assurance Company of New York, Sued as: American Centurion Life Assurance Company; American Enterprise Life Insurance Company; American Partners Life Insurance Company; IDS Life Insurance Company; IDS Life Insurance Company of New York

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Marjory Gail Thomas Osborn-Vincent was an unnamed class member in an action settled in the District of Minnesota involving alleged misrepresentations made by the defendants while marketing, selling, administering, and servicing various life insurance and annuity products. See Benacquisto v. Am. Express Fin. Corp., Civil No. 0:00-cv-1980-DSD/DTS (D. Minn. 2001). After Osborn-Vincent died in March 2016, her Estate commenced an action in Oregon asserting various contract, fraud, and elder abuse claims pertaining to Osborn-Vincent's 1989 purchase of a purported "single-premium universal life insurance policy." Her Estate alleges that beginning in 2010, the defendants started charging monthly premiums and costs that eventually led to the depletion of the policy's funds, which ultimately caused it to lapse. The district court granted the defendants' motion to enforce the settlement agreement and enjoined the Estate from pursuing the Oregon claims.

In a prior appeal, this Court found personal jurisdiction lacking because the defendants had not served the party they sought to enjoin (the Estate's personal representative), nor had they moved to substitute the personal representative as a party. Estate of Osborn-Vincent v. Am. Express Fin. Corp., 835 F. App'x 167 (8th Cir. 2021) (unpublished). On remand, the district court[1] addressed the Court's concerns and granted the defendants' motion to substitute Richard Osborn as the Estate's personal representative, denied the Estate's motion to dismiss, and granted the defendants' motion to enforce the settlement agreement. The Estate again appeals, contending the district court erred by making insufficient and erroneous

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

findings relating to jurisdiction and Federal Rule of Civil Procedure 25(a), by misapplying the facts and circumstances when it enforced the settlement agreement and enjoined the Estate from pursuing claims in Oregon, and by declining to apply the equitable doctrines of laches and unclean hands. We affirm.

We review *de novo* the district court's interpretation of the Federal Rules of Civil Procedure. Kuelbs v. Hill, 615 F.3d 1037, 1041 (8th Cir. 2010). The Estate asserts the defendants failed to properly serve the personal representative under Rule 4 of the Federal Rules of Civil Procedure and that substitution of the personal representative was untimely and improper under Rule 25(a) of the Federal Rules of Civil Procedure. We find both arguments unavailing.

"Rule 25(a) is a procedural rule setting forth the proper method for the substitution of parties, and federal courts must apply federal rules, rather than state law, in determining the proper procedure for substitution following a party's death." In re Baycol Prods. Litig., 616 F.3d 778, 785 (8th Cir. 2010). Because the decision to allow the substitution of a party lies within the sound discretion of the district court, we review the district court's determination to substitute a party for an abuse of discretion. Kemp v. Balboa, 175 F.3d 1024 (8th Cir. 1999) (citing Froning's, Inc. v. Johnston Feed Svc., Inc., 568 F.2d 108, 110 n.4 (8th Cir. 1978)); see Fed. R. Civ. P. 25(a) (1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party.").

Rule 25(a)(3)'s non-party service requirement serves two important purposes: (1) it assures actual notice is provided to the proper non-party, Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994), and it brings the non-party within a court's jurisdiction, Ransom v. Brennan, 437 F.2d 513, 518 (5th Cir. 1971). According to the Estate, service was deficient because the defendants served the personal representative with their motions to enforce the settlement agreement and for party substitution, but not a summons and complaint. While Rule 25(a)(1) could be clearer, a careful reading of the rule coupled with an understanding of its purposes leads to two conclusions. First, to trigger the 90-day limitation period set forth in

the rule, a party must serve a statement noting death. <u>Younts v. Fremont Cnty., Iowa</u>, 370 F.3d 748, 752 (8th Cir. 2004). The rule, however, was not intended to mandate a statement noting death. <u>See</u> <u>Kaubisch v. Weber</u>, 408 F.3d 540, 543 (8th Cir. 2005) (noting the Advisory Committee Notes to Rule 25 state that a motion for substitution may be made by any party or representative of the deceased party without awaiting the suggestion of death). And, second, a motion to substitute a party and/or a suggestion of death must be served on other parties as provided in Rule 5 and on non-parties in the manner provided by Rule 4. Fed. R. Civ. P. 25(a)(3).

To effectuate service under Rule 4, a party may either follow state law where service is made or fulfill one of the following: (a) deliver a copy to the individual personally; (b) leave a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) deliver a copy to an authorized agent. Fed. R. Civ. P. 4(e). Here, the personal representative (a non-party) was served with the motion to substitute in a manner provided by Rule 4, received notice in compliance with Rule 25(a), and was properly brought within the jurisdiction of the Minnesota district court. <u>Cf.</u> <u>Adams v. AlliedSignal Gen. Aviation Avionics</u>, 74 F.3d 882, 885 (8th Cir. 1996) (explaining that a district court lacks jurisdiction over an improperly served party whether or not it had notice of the lawsuit). Under these circumstances, service of a summons and complaint contemporaneously with service of the motion to substitute party was neither required by Rule 25(a) nor caused service to be deficient for purposes of substitution of a deceased party following this Court's remand.

The Estate also contends the district court erred because the request to substitute was untimely since it was made more than 90 days after the Estate filed a formal notice of death. The Estate argues two statements in its 15-page brief in opposition to the defendants' first motion to enforce the settlement, which does nothing more than make a passing reference to "Decedent's death" and "records at her death" (Dist. Ct. Dckt. #617, pp. 6, 12), is the equivalent to a formal notice of death. The Estate's interpretation of the meaning of formal notice is inconsistent with the common understanding of the term and our precedent. <u>See</u> <u>Campbell v.</u>

-4-

State of Iowa, Third Jud. Dist. Dep't of Corr. Servs., 702 F.3d 1140, 1142 (8th Cir. 2013) (requiring a formal motion to suggest death as one method to substitute a party); In re Baycol Prods. Litig., 616 F.3d at 784 (quoting Rende v. Kay, 415 F.2d 983, 986 (D.C. Cir. 1969)) ("[A] suggestion of death should identify the representative or successor of an estate who may be substituted as a party for the deceased before Rule 25(a)(1) may be invoked.").

The Estate next argues that the court lacks personal jurisdiction because the personal representative has no contacts to Minnesota. Despite the personal representative's purported lack of contacts with Minnesota, Osborn-Vincent did not opt out of the Benacquisto class action, and the district court explicitly retained jurisdiction over the settlement agreement. The Supreme Court has explained the lesser need for external protections of class plaintiffs in certain situations. Compare Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 808-12 (1985) (To bind an absent class action plaintiff, even a plaintiff who does not possess minimum contacts with the forum, minimal due process protection is required, which involves notice and an opportunity to be heard and participate in the litigation), with Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty., 582 U.S. ___, 137 S. Ct. 1773, 1781-82 (2017) (nonresident consumers' products liability claims against nonresident prescription drug manufacturer were not connected to California and due process did not permit the exercise of specific personal jurisdiction over the claims in California). The district court in this case approved the minimally required procedural due process safeguards in the class action, including notice of the Benacquisto class action and an opportunity for class members to participate in the litigation and be heard. Beyond the Estate's self-serving statements, there is no evidence suggesting the defendants did not follow the approved procedures when notifying Osborn-Vincent or that Osborn-Vincent did not receive a benefit—free accidental death benefit insurance—in exchange for release of the identified claims. The district court did not err in finding it had personal jurisdiction over Richard Osborn, as the personal representative of the Estate, who is bound by the terms of the Benacquisto settlement agreement.

The settlement agreement contained a broad release covering the period of January 1, 1985, to February 29, 2000. The class plaintiffs agreed to "release, acquit and forever discharge [the defendants] from any and all past or present Claims and Causes of Action (defined below)[2] that are based upon, related to, or connected with, directly or indirectly, in whole or in part . . . the allegations, facts or subjects set forth or otherwise raised in Benacquisto." Dist. Ct. Dckt. #459-6, Settlement Agreement, p. 53. The class plaintiffs also agreed to "not now or hereafter initiate, participate in, maintain, maintain a right to or assert against the [defendants], or any of them, either directly or indirectly, derivatively, on their own behalf, or on behalf of the Class or the general public or any other person or entity, and Claims and Causes of Action (as defined below) that are based upon, related to, or connected with, directly or indirectly, in whole or in part . . . the allegations, facts or subjects set forth or otherwise raised in Benacquisto." Id. at p. 54.

The Oregon claims, while occurring temporally after the class period closed, are plainly related to the representations purportedly made by the defendants in 1989 and 1991 indicating that Vincent-Osborn would not owe any premiums. Because the alleged bad acts are based upon, relate to, and are connected to released conduct,

_____

[2]"Claims and Causes of Action" was defined in the settlement agreement to mean "any and all claims for relief (including any federal, exclusively federal, state, or other causes of action, suits, petitions, or demands in law or equity), any and all allegations of liability (including any allegations of debts, obligations, promises, guarantees, damages, awards, or for any equitable, legal and administrative relief), and any and all demands for damages or equitable relief (including any claims for recission, reformation, restitution or damages of any kind, including those in excess of actual damages and claims for mental anguish), that have been, could have been, may be or could be asserted in any court action, whether federal, state or otherwise, or before any administrative body (including any brought by or on behalf of any state or local insurance, prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body, regardless of whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Settlement." Dist. Ct. Dckt. #459-6, Settlement Agreement, pp. 56-57.

the district court did not err in finding the claims brought in the Oregon action are precluded by the plain language of the terms in the <u>Benacquisto</u> settlement agreement.

Lastly, the Estate seeks review of the district court's decision declining to apply the doctrines of laches or unclean hands. We review the district court's determination relating to equitable defenses for abuse of discretion. <u>Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.</u>, 959 F.3d 903, 911 (8th Cir. 2020). Upon careful review of the record, the district court did not abuse its discretion in finding the doctrines of laches and unclean hands were inapplicable under the facts and circumstances of this case. <u>See</u> <u>In re BankAmerica Corp.</u>, 15 4th 865, 872 (8th Cir. 2021) (stating the requirements for laches include a showing of unreasonable and inexcusable delay that has resulted in prejudice); <u>Slidell, Inc. v. Millennium Inorganic Chems., Inc.</u>, 460 F.3d 1047, 1058 (8th Cir. 2006) (noting unclean hands bars a party who acted inequitably in relation to the merits of the case from obtaining equitable relief).

For the foregoing reasons, the district court's judgment is affirmed.

_____