2026 IL App (1st) 250614-U

FIFTH DIVISION
February 20, 2026

No. 1-25-0614

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| MARILYN COUDRAIN, as Administrator of the Estate of Ellen Smith, *et al.*, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Appeal from the Circuit Court of Cook County. |
| WALGREEN CO.; WALGREENS BOOTS ALLIANCE, INC.; GLAXOSMITHKLINE, LLC; GLAXOSMITHKLINE HOLDINGS (AMERICAS), INC.; PFIZER, INC.; BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.; BOEHRINGER INGELHEIM USA CORPORATION; BOEHRINGER INGELHEIM CORPORATION; SANOFI-AVENTIS U.S. LLC; and SANOFI US SERVICES, INC., | ) ) ) ) ) ) ) ) | No. 23 L 3569 |
| Defendants, | ) ) ) ) | Honorable Daniel Trevino, Judge Presiding. |
| (Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim USA Corporation; Boehringer Ingelheim Corporation; Sanofi-Aventis U.S. LLC; and Sanofi U.S. Services, Inc., Defendants-Appellees). | ) ) ) | |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in dismissing nonresident plaintiffs' claims for lack of personal jurisdiction where those claims did not relate to defendants' contacts with Illinois.

¶ 2     The question before us is whether the claims of these nonresident plaintiffs, who were not injured in Illinois, can proceed in the Illinois courts against these defendants. It is undisputed that the medication that is alleged to have injured these plaintiffs was not manufactured in Illinois, but plaintiffs point to the fact that defendants utilized certain third-party companies in Illinois to repackage, inspect, and distribute products for nationwide distribution and to sell this same product to other people in Illinois. We hold that our courts do not have jurisdiction over these claims against these defendants for the reasons outlined below and affirm the dismissal of these claims by the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     The cases in which these appeals are brought are among thousands of individual lawsuits filed in federal and various state courts against the manufacturers and marketers of Zantac, a brand of heartburn medication with the active ingredient of ranitidine. Between August 22, 2022, and September 26, 2022, five lawsuits with over 300 plaintiffs residing in 39 states were filed in Madison County, Illinois. These cases were filed against numerous defendants, some of whom have had the claims against them dismissed or have settled.

¶ 5     The defendants who are parties to this appeal are  Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim USA Corporation (collectively, Boehringer), and Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. (collectively, Sanofi). The plaintiffs alleged in their complaint strict product liability, failure to warn, negligent transportation and storage, negligent misrepresentation, fraud, and breach of express and implied warranties—all stemming from their use of Zantac, which was manufactured, marketed, and sold by these defendants and which the plaintiffs alleged caused them cancer. On October 25, 2022, the Illinois Supreme Court consolidated these actions with several other

Illinois cases alleging similar ranitidine-related injuries in Cook County. All multi-plaintiff actions were administratively dismissed, and plaintiffs were instructed to refile individual complaints. This appeal concerns 180 out-of-state plaintiffs, including the first named plaintiff, Marilyn Coudrain, as administrator of the estate of Ellen Smith, who refiled individual actions in Cook County.

¶ 6    On October 25, 2023, Boehringer, Sanofi, and other defendants who are not parties to this appeal, filed a joint motion under section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 2022)) to dismiss all non-Illinois plaintiffs' claims for lack of general and specific jurisdiction. Boehringer and Sanofi argued that the court had no general jurisdiction over them because neither their headquarters nor their principal places of business were in Illinois. They argued that they were not subject to the court's specific jurisdiction because the plaintiffs were not residents of Illinois, had not purchased or consumed Zantac in Illinois, and were not injured in Illinois.

¶ 7    After jurisdictional discovery, plaintiffs filed their response on January 10, 2025. They argued that Boehringer and Sanofi "purposefully reached into Illinois with respect to the development, marketing, and sales of their Zantac products." The plaintiffs pointed to the fact that Boehringer and Sanofi intentionally sought out and contracted with Walgreens and other Illinois corporations for product sales and distribution, and that each plaintiff bought their Zantac from a Walgreens store. The gist of their argument was that Boehringer utilized several Illinois companies to help it "market, promote, and enter into contracts for selling Zantac to Walgreens, an Illinois company, for sales nationally."

¶ 8    The plaintiffs pointed out that Boehringer also contracted with two Illinois companies to repackage Zantac for nationwide sales. The first company, Mechanical Servants, was based in Melrose Park, Illinois. As part of this agreement, Boehringer would ship Zantac to Mechanical

3

Servants in Illinois, which would then put the medication into its final packaging with the appropriate labels and package inserts. The agreement specifically noted that Mechanical Servants was to include in its final packages the "FDA Drug Facts Labeling for the Products," which, according to plaintiffs, was defective and failed to warn consumers that Zantac contained NDMA, a known carcinogen. The agreement also specified that Boehringer was to provide Mechanical Servants samples of this FDA label as well as all "necessary Intellectual Property, Storage Specifications and IP Specifications including all artwork, copy, or other material relating to the Products," which Mechanical Servants could not alter. Boehringer entered into an identical repackaging agreement with Modern Aids, another Illinois corporation based in Elk Grove.

¶ 9    Boehringer also entered into an agreement with Rand Diversified Companies, LLC (Rand) to provide quality assurance testing. Although Rand was headquartered in New Jersey, a substantial part of this agreement was to be performed at its facility in Edwardsville, Illinois. Additionally, Boehringer retained a Texas-based broker, Crossmark, Inc., to help it market and sell Zantac, including to Walgreens, for nationwide sales.

¶ 10    According to plaintiffs, Sanofi earned $465,486,873.15 in revenue from the products it sold in Illinois between 2017 and 2023. This figure included $14,652,126.54 worth of Zantac sold to Illinois companies, nearly $5,000,000 of which was sold and shipped to Walgreens in Illinois for national distribution. Like Boehringer, Sanofi also had agreements with Modern Aids and Mechanical Servants to provide repackaging services in Illinois. Additionally, Sanofi contracted with other companies with ties to Illinois to help it sell Zantac. For example, Sanofi contracted with AmerisourceBergen to sell its products. Although AmerisourceBergen is based in Orlando, Florida, its largest shareholder is Walgreens. Through AmerisourceBergen, Sanofi sold millions of dollars of Zantac to retailers and distribution hubs in Illinois for Amazon, Sam's Club,

4

Supervalu, McKesson, Costco, and Walgreens. The plaintiffs highlighted the fact that their failure-to-warn claim stemmed from the defective label that did not warn consumers that Zantac contained a known carcinogen and that that label was inserted into Zantac packages in Illinois.

¶ 11    Plaintiffs also argued that the court had general jurisdiction over Boehringer and Sanofi under *Mallory v. Norfolk Southern Railway Co*., 600 U.S. 122 (2023), because some of the entities were, or had recently been, foreign corporations registered to do business in Illinois. Plaintiffs contended that it would be reasonable to exercise personal jurisdiction over these defendants because similar claims of Illinois residents were continuing in Cook County, rendering the resolution of these claims little additional burden on the state and because Illinois had significant contacts with these companies.

¶ 12    The circuit court heard argument on January 23, 2025. The court asked the plaintiffs to address *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), in which the United States Supreme Court had held  that a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction. The plaintiffs argued that unlike in that case, where sales agents had broad discretion over where and how they sold medication, Boehringer and Sanofi specifically directed these third parties to sell Zantac to Walgreens. In rebuttal, Boehringer and Sanofi stressed that *Bristol-Myers* should control, and pointed out that the purportedly defective labels were not drafted or created in Illinois and no plaintiff could definitively trace their pills as having passed through Illinois.

¶ 13    The court granted Boehringer and Sanofi's motion to dismiss. It reasoned that the nonresident plaintiffs' claims did not arise out of or relate to any of Boehringer or Sanofi's activities in Illinois and that their contacts with third-party companies to distribute, market, and package Zantac were not a sufficient basis for jurisdiction.

¶ 14    This appeal followed.

¶ 15                                    II. JURISDICTION

¶ 16    The circuit court granted Boehringer and Sanofi's motion to dismiss for lack of personal jurisdiction in orders entered between March 5, 2025, and March 24, 2025, in the nonresident plaintiffs' cases, and plaintiffs timely filed a notice of appeal on April 3, 2025. We have jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), which govern appeals from final judgments entered by the circuit court in civil cases.

¶ 17                                    III. ANALYSIS

¶ 18    The Illinois long-arm statute governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant. 735 ILCS 5/2-209 (West 2022); *Russell v. SNFA*, 2013 IL 113909, ¶ 29. The statute permits the exercise of personal jurisdiction over a nonresident defendant to the extent that it is permitted by the Illinois Constitution and the Constitution of the United States. *Russell*, 2013 IL 113909, ¶ 29. Since the  Illinois long-arm statute is co-extensive with the limits of due process, we must determine whether due process permits the exercise of personal jurisdiction over these defendants on the claims of these out-of-state plaintiffs. *Id.* ¶ 30.

¶ 19    Due process requires that a defendant have such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Ford Motor Company v. Montana Eighth Judicial District Court,* 592 U.S. 351, 358 (2021). In Illinois, the "threshold issue" is often referred to as "the 'minimum contacts' test." *Russell*, 2013 IL 113909, ¶ 36. The contacts necessary to satisfy this test will depend on whether the plaintiff is asserting that the court has general or specific personal jurisdiction over a defendant. *Rios*, 2020 IL 125020, ¶ 19. Plaintiffs here assert that the court had both general and specific jurisdiction over Boehringer and Sanofi.

¶ 20 General jurisdiction exists where a corporate defendant "has engaged in continuous and substantial business activity within the forum," and allows them to be sued for any claim, regardless of where the conduct took place, because they are essentially "at home" in the forum state. *Id*. Specific jurisdiction, on the other hand, requires a showing that (1) "the defendant purposefully directed its activities at the forum state" and (2) "the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40. Even where these first two criteria are met, specific jurisdiction also includes a "reasonableness" prong. *Rios*, 2020 IL 125020, ¶ 30.

¶ 21 It was the plaintiffs' burden to "establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant." *Rios v. Bayer Corp*., 2020 IL 125020, ¶ 16. When, as here, the circuit court based its determination of jurisdiction solely on documentary evidence, our review is *de novo. Id.* We consider plaintiffs' claims for specific and then for general jurisdiction over these defendants on these claims.

¶ 22                                 A. Specific Jurisdiction

¶ 23 Plaintiffs point out that, to satisfy the first requirement of specific jurisdiction, they only need show that Boehringer and Sanofi purposely directed *activities* into Illinois and that this is not an exacting standard. *Kothawala v. Whole Leaf, LLC*, 2023 IL App (1st) 210972, ¶ 29. These activities "need not be causally or even indirectly related to the claims plaintiff raises in the lawsuit; that deeper dive into the facts of the lawsuit occurs in the second prong regarding causation or relatedness." *Id.* Boehringer and Sanofi sold millions of dollars of Zantac in Illinois. Both also utilized Illinois companies to market and repackage Zantac for nationwide distribution as well as to perform quality assurance work, functions which were all, at least partially performed at various locations throughout Illinois. Thus, it appears that defendants did direct activities into Illinois.

¶ 24    Plaintiffs also spend a great deal of their briefs discussing the reasonableness requirement. They rely on the fact that defendants engaged in direct-to-consumer marketing efforts through a major distributor, Walgreens, an Illinois company, and that defective and insufficient labeling took place in Illinois. All of this, according to plaintiffs, makes it "reasonable for this Court to exercise personal jurisdiction over the Defendants" in this case.

¶ 25    However, even if we agree that plaintiffs meet the first prong, and that the exercise of jurisdiction would be reasonable, plaintiffs clearly fail to meet the second prong of the test for specific personal jurisdiction, which requires that the cause of action "arose out of or relates to" Boehringer and Sanofi's contacts with Illinois.

¶ 26    Plaintiffs argue that their claims "relate to" Boehringer and Sanofi's activities in Illinois because "those activities were intentionally directed into Illinois for the purpose of getting consumers in every state, like Plaintiffs, to believe their claims and buy their Zantac at their local Walgreens." Plaintiffs point to the facts cited above in their reasonableness argument regarding nationwide marketing and repackaging in Illinois and to their allegation that each of these out-of-state plaintiffs purchased their Zantac at a Walgreens.

¶ 27    According to plaintiffs, the circuit court misconstrued the meaning of "relate to," a requirement that they insist "is flexible, lenient, and does not require a showing of causation." Plaintiffs contend that the circuit court improperly relied on *Rios* and *Bristol-Myers* and that the reach of these cases must be reconsidered in light of the more expansive understanding of specific personal jurisdiction articulated by the United States Supreme Court in *Ford Motor Company v. Montana Eighth Judicial District Court,* 592 U.S. 351 (2021).

¶ 28    Plaintiffs' reliance on the analysis in *Ford* is misplaced. That analysis did not fundamentally change the requirements for specific personal jurisdiction in the way plaintiffs

suggest. That case does not address cases where, as here, the plaintiffs are not residents of the forum state and the injury did not occur in that state. The jurisdictional limitations set forth in *Bristol-Myers* and *Rios* for claims brought by nonresident plaintiffs who suffered an injury outside the state remain in place and are directly applicable to the facts of this case.

¶ 29    In *Ford*, the U.S. Supreme Court concluded that two different states could exercise personal jurisdiction over Ford Motor Company where, in each instance, a resident of that state was injured in that state by an allegedly defective Ford vehicle. *Id.* at 354-55. The two specific vehicles at issue were not actually sold to the plaintiffs by Ford in the forum states. *Id.* at 355. Rather, they were resold to the plaintiffs in those states by the prior owners. *Id.* at 357. The Supreme Court rejected Ford's argument that the courts could not exercise personal jurisdiction over it, as a nonresident defendant, unless the company had designed, manufactured, or sold the car in the forum state. Ford's argument, which the Supreme Court rejected, was that the conduct of Ford in the forum state must be what "gave rise to the plaintiff's claims." *Id.* at 361. The court read its prior precedent as not requiring a "strict causal relationship" between a defendant's in-state activities and the plaintiff's injury. *Id.* at 362. Rather, the plaintiff's suit must "arise out of or *relate to* the defendant's contacts with the forum." (Emphasis in original.) *Id.* (quoting *Bristol-Myers Squibb Co.*, 582 U.S. 255, 262 (2017)). In *Ford* the court found this relationship in the fact that the car accidents took place in the forum states, the defective Ford vehicles caused the crashes and resulting harm in the forum states, and Ford had advertised, sold, and serviced those two car models in the forum states for many years. *Id.* at 365. As the court concluded, "Ford had systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.*

¶ 30    Plaintiffs argue that *Ford's* relaxation of the causal requirement means that they need only

show that defendants marketed and sold other units of Zantac in Illinois and utilized Illinois as part of their nationwide distribution efforts. Their claim is that this fact and the defendants' other activities involving Illinois companies, like repackaging and quality assurance, are sufficient to vest Illinois courts with jurisdiction over these defendants for claims involving nonresident plaintiffs and injuries.

¶ 31    Plaintiffs' argument significantly overstates the holding in *Ford.* Citing to *Bristol-Myers*, the court in *Ford* explained, "That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id*. at 362. In *Ford* the necessary relationship between the injury and the forum states was present because the plaintiffs were residents of the forum states, the accidents that injured them took place in the forum states, *and* Ford had systematically served a market for those vehicles in those states. *Id*. at 365. While *Ford* relaxed the necessary causal relationship between defendant's conduct in the forum state for those cases in which a claim is brought by a resident of the forum state for an injury that occurred in that state, nothing in that case suggests that the Court was announcing a new rule for cases like this one where there is no tie to the forum state by way of the plaintiff's residency or the alleged injury. *Id*. at 365-67.

¶ 32    *Bristol-Myers* and *Rios,* relied on by the circuit court, are both applicable here, and the analysis of the court in each of those cases is not impacted by *Ford.* In *Bristol-Myers*, the plaintiffs sued a pharmaceutical manufacturer in California for injuries allegedly caused by one of its prescription drugs, Plavix. *Bristol-Myers Squibb Co.*, 582 U.S. 255, 260 (2017). The plaintiffs were not residents of, injured in, or treated in California and the drug was not purchased there. *Id.* Plaintiffs argued that the company's "wide ranging" business activities in the state, which included a distribution agreement with a California company and sales in the state that led to similar claims

by residents, were enough connection to the forum state. *Id.* at 255. The Supreme Court explained that these activities were insufficient to establish specific personal jurisdiction:

> "[A] defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. *** What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at 265. (Internal citations and quotation marks omitted).

¶ 33     Similarly, in *Rios*, nonresident plaintiffs brought an action in Illinois against an out-of-state company for injuries suffered outside of Illinois caused by a device manufactured outside of Illinois. *Rios*, 2020 IL 125020, ¶ 1. The company, Bayer, had conducted clinical trials in Illinois (and other states), held a physician training program for the harmful device in Illinois, and coordinated a marketing strategy in Illinois, all of which the Illinois Supreme Court found did not sufficiently relate to the claims brought by the plaintiffs. *Id*. ¶ 24. Most relevant here was the failure-to-warn allegation against Bayer, which the supreme court noted failed because "plaintiffs fail[ed] to allege that either they or their physicians received that false information in Illinois, and as noted, th[o]se plaintiffs and their physicians d[id] not reside in th[e] forum." *Id*. ¶ 26. In short, "nothing in their complaints link[ed] Bayer's alleged failure to warn the nonresidents and their physicians to any activities that occurred or should have occurred in Illinois." *Id.*

¶ 34     Plaintiffs attempt to distinguish *Rios* on the basis that Boehringer and Sanofi utilized Illinois companies to repackage Zantac with defective warning labels. However, as defendants point out, there was no evidence that any of these out-of-state plaintiffs purchased a Zantac product packaged or distributed by those Illinois companies or that there was any connection between the conduct of these Illinois companies and the injury to these nonresident plaintiffs.

¶ 35    Plaintiffs attempt to distinguish *Bristol-Myers* by arguing that Boehringer and Sanofi "reached into Illinois to create a marketing, distribution, and sales plan with Walgreens, the largest retail pharmacy in the United States," and that plaintiffs allege in their complaints that they purchased their Zantac from a Walgreens store. Plaintiffs contrast these facts with those in *Bristol-Myers,* where the third-party distributor was a resident of the forum state but, as the Court noted, could not necessarily be proven to be the distributor to the pharmacies where the nonresident plaintiffs purchased Plavix. *Bristol-Myers Squibb Co.*, 582 U.S. 255, 268 (2017).

¶ 36    However, this distinction is not significant. Walgreens is still a third party, and the fact that Illinois courts could have jurisdiction over a claim against them does not give rise to derivative jurisdiction over the defendants in this case. As the court made clear in *Bristol-Myers,* the plaintiffs must have jurisdiction over each of the defendants and a relationship between a defendant and a third party, over whom the court could exercise jurisdiction, is simply not sufficient. *Id.* at 268.

¶ 37                              B. General Jurisdiction

¶ 38    Plaintiffs also argue that Illinois can exercise general jurisdiction. They contend this jurisdiction exists over Boehringer because it is registered to do business in Illinois and over Sanofi because one of its companies was registered to do business in Illinois from 2006 until 2017.

¶ 39    General jurisdiction is "all-purpose" and allows the defendant to be sued for any claim, regardless of where the plaintiff was injured or resides or where the conduct took place, because the defendant is essentially "at home" in the forum state. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 14. Plaintiffs claim that Boehringer and Sanofi should be subject to general jurisdiction "based on their foreign corporate registration under 735 ILCS 5/2-209 and the U.S. Supreme Court's holding in *Mallory*."

¶ 40    *Mallory* answered the narrow question of whether the federal due process clause prohibits

a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there. *Mallory*, 600 U.S. at 127. The defendant corporation in that case had registered to do business in Pennsylvania for over 20 years and understood that, pursuant to Pennsylvania law, it would be amenable to suit there on any claim. *Id*. at 135. The court found that these facts and Pennsylvania law—which it noted "is explicit that qualification as a foreign corporation shall permit state courts to exercise general personal jurisdiction over a registered foreign corporation"—made the exercise of general jurisdiction permissible. (Internal quotation marks omitted.) *Id*. at 134. The court specifically noted that this holding was limited, explaining, "To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." *Id*. at 135.

¶ 41     Plaintiffs overstate the impact of *Mallory,* which in no way undermined the clear pronouncement of our own supreme court in *Aspen* that: '[T]he fact that a foreign corporation has registered to do business under the Act does not mean that the corporation has thereby consented to general jurisdiction" of the Illinois courts. *Aspen*, 2017 IL 121281, ¶ 22. As our supreme court recognized in *Aspen,* neither the Illinois long-arm statute (735 ILCS 5/2-209 (West 2012)) nor the Business Corporation Act (805 ILCS 5/1.01 *et seq*. (West 2012)) have any provision, like the Pennsylvania provision at issue in *Mallory*, that would support a claim that by registering to do business, an out-of-state corporation consents to general personal jurisdiction. While *Aspen* predates *Mallory,* the analysis of our supreme court regarding the relevant Illinois statutes makes it clear that the rule in Pennsylvania simply has no application in Illinois. See *Franco v. Chobani, LLC*, 789 F. Supp. 3d 584, 602 (N.D. Ill. 2025) ("Nothing in *Mallory* demands a different result or upsets this [*Aspen*] conclusion, which is based squarely on statutory interpretation.")

¶ 42                                          IV. CONCLUSION

13

¶ 43    The circuit court did not err in granting Boehringer and Sanofi's motion to dismiss the nonresident plaintiffs' claims, where no specific or general personal jurisdiction exists. We affirm the circuit court's dismissal.

¶ 44    Affirmed.

¶ 45                                    V. APPENDIX

¶ 46    Plaintiffs-Appellants

| Plaintiff | Cook County Circuit Court Case Number |
|---|---|
| Ellen Smith (LEAD CASE) | 2023L003569 |
| Olivia Adams | 2023L003324 |
| Deanna Adelman | 2023L004069 |
| Anthony Anderson | 2023L003624 |
| Susan Austin | 2023L003631 |
| Janardanan Ayyappan | 2023L003327 |
| Cynthia Ballou | 2023L003653 |
| Rita Banks (for Estate of Wilbert Banks) | 2023L003659 |
| Shirley Barney | 2023L003341 |
| Venissa Barquet | 2023L003675 |
| Mary Barrett | 2023L003425 |
| Linwood Battle | 2023L003673 |
| Norene Beard | 2023L003431 |
| Jimetta Beasley | 2023L003426 |
| Barbara Belcher | 2023L003430 |
| Mary Betts | 2023L003684 |
| Michael Borookhim | 2023L003957 |
| Anthony Bouchard | 2023L003697 |
| Sybil Bouse | 2023L004044 |
| Anna Brandtjen (Estate of Anthony Brandtjen) | 2023L004013 |
| Douglas Brenton | 2023L003961 |
| Janet Brett | 2023L003730 |
| Sandra Brogan | 2023L003438 |
| Elvira Brown | 2023L003735 |
| Erin Brown | 2023L004043 |
| Shelley Bullock | 2023L003463 |
| Owen Burdge | 2023L004039 |
| Jimmy Burnside | 2023L003761 |
| Boyd Cain | 2023L003700 |
| Charles Caldwell | 2023L004046 |
| Matt Callahan | 2023L003762 |

14

| | |
|---|---|
| Alfredo Canizalez | 2023L003766 |
| Serenia Carnegie | 2023L004048 |
| Nancy Carnes (Estate of Mark Carnes) | 2023L004094 |
| Missouri Carstaffney | 2023L003767 |
| Allen Carter | 2023L003667 |
| Norma Cetuk | 2023L003768 |
| Helen Chow | 2023L003704 |
| Richard Christoffersen | 2023L003988 |
| Nicole Christopher | 2023L003707 |
| John Clare | 2023L004104 |
| Dorothy Collins | 2023L003791 |
| Gerald Combs | 2023L004050 |
| Eddie Cooper | 2023L004054 |
| Marilyn Coudrain | 2023L003569 |
| Carolyn Coughlin | 2023L003712 |
| Cynthia Covington | 2023L003433 |
| Candace Crone | 2023L003785 |
| Patricia Crouch | 2023L004012 |
| Christine Currie | 2023L003432 |
| Anthny Czerwein | 2023L003440 |
| Daisy Damian | 2023L003779 |
| Gemayel Davis | 2023L003789 |
| Michael Davis | 2023L004015 |
| Roncindra Davis | 2023L003797 |
| Jeffrey Todd Davis | 2023L003795 |
| Heidi DeClue | 2023L003970 |
| Sharmayne Dicks | 2023L003787 |
| Deborah Dodd | 2023L003807 |
| Ruth Dorrance | 2023L003815 |
| Deborah Drew | 2023L003442 |
| Nanci Drury | 2023L003444 |
| Richard Dusch | 2023L003817 |
| Roland Eaglin | 2023L003820 |
| Gary D. Eckrich | 2023L003819 |
| Cathy Evans | 2023L003842 |
| Jeanette Evans | 2023L003847 |
| Georgia Ezeilo | 2023L003434 |
| Pearl R. Fields | 2023L003443 |
| William Fleming | 2023L004011 |
| George Flint | 2023L003454 |
| Robert Florkey | 2023L003845 |
| Aaron J. Foster | 2023L004093 |
| Dennis Fox | 2023L003680 |
| Emilio Franco | 2023L003848 |

| Katrina Frazier | 2023L003852 |
|---|---|
| Ronald Fulmer | 2023L003854 |
| Richard Gaiti | 2023L004097 |
| Dinah George | 2023L003879 |
| Larry German | 2023L004102 |
| Jeffrey Gill | 2023L003455 |
| Khaliefe Glover | 2023L003763 |
| Emmanuel Goldstein | 2023L003467 |
| Greg Gover | 2023L003738 |
| Michael Hall | 2023L003865 |
| Shayne (Shane) M. Hall | 2023L003868 |
| Lashonda Hampton | 2023L003858 |
| Minnie Harris | 2023L003871 |
| Douglas Harrison | 2023L003869 |
| Joshua Hawkins | 2023L003873 |
| Tina Herrin | 2023L003874 |
| Tomasa Hill | 2023L003876 |
| Lois Hinkle | 2023L003464 |
| Sandra Holmes | 2023L003739 |
| Willie Holmes | 2023L003731 |
| John Holstein | 2023L003465 |
| Dawn Hurr | 2023L003447 |
| Earl Johnson | 2023L003466 |
| Lisha Johnson | 2023L003467 |
| Maria Johnson | 2023L003469 |
| Gary Johnston | 2023L003470 |
| Gilbert Joines | 2023L003705 |
| Kenya Knezevich | 2023L003733 |
| Joan Knoph | 2023L003890 |
| Leonard J. Lee | 2023L003908 |
| Carol Lorenz | 2023L004100 |
| Betty Lu bar | 2023L004061 |
| Lawrence Luckey | 2023L003905 |
| David William Lundblom | 2023L003907 |
| Carlos Maldonado | 2023L003923 |
| David Mann | 2023L003504 |
| Vicki McCall | 2023L003930 |
| David McClelland | 2023L003932 |
| Jean McDonnell | 2023L003523 |
| Curtis McPherson | 2023L003744 |
| Mark Meyer | 2023L003529 |
| Micheal Miller | 2023L003920 |
| Richard B. Moffitt | 2023L004062 |
| Kerrie L. Moran. | 2023L003919 |

| Deborah Morgan | 2023L004066 |
|---|---|
| Freedom Murray | 2023L003915 |
| Azmi Mustafa | 2023L004005 |
| Garard Naff | 2023L003974 |
| Albert Nevarez, Jr. | 2023L004004 |
| Robert Newman | 2023L004077 |
| Marilyn Denise Oreoluwa | 2023L004127 |
| Joshua Owens | 2023L003533 |
| Gloria Y. Pacley | 2023L003535 |
| Shanna Palmour | 2023L003996 |
| Dina Peller | 2023L003750 |
| Renita Perez | 2023L004090 |
| Kaysandra Peyton | 2023L003769 |
| Michele Dawn Piacquadio | 2023L003538 |
| Franco Polizzi | 2023L003992 |
| Marlon Pucket | 2023L003984 |
| Vadalina Quinones | 2023L003542 |
| David Long Quintero | 2023L004107 |
| Sharon Renfro | 2023L003951 |
| Patricia Rhem | 2023L003939 |
| Danica Riley | 2023L003752 |
| Vernon Risby | 2023L003969 |
| Craig Rodkin | 2023L004001 |
| Elvir Sabanovic | 2023L003991 |
| Marco Antonio Sandoval | 2023L003976 |
| Kimberly Sayles | 2023L003941 |
| Louise Scott | 2023L003567 |
| Sammy Shah | 2023L003943 |
| Patricia Siebert | 2023L003568 |
| Joseph T. Silva | 2023L003916 |
| Pamela Smith | 2023L003812 |
| Rebecca Smith | 2023L003574 |
| Talton Smith | 2023L003575 |
| Donna Snyder {Estate of Ronald Lee Snyder) | 2023L003782 |
| Melisa Sobota | 2023L003579 |
| Rose A. South | 2023L003986 |
| Christian Spining | 2023L003813 |
| Olivia Sutton | 2023L003841 |
| Jeffrey Tantleff | 2023L003826 |
| Johnnie Tarver | 2023L004032 |
| Tinisha Thomas | 2023L003582 |
| David Thurau | 2023L003827 |
| Shane Tomczak | 2023L004086 |
| Elizabeth Francy Torres Vieira | 2023L003833 |

| | |
|---|---|
| Timmy Trahan· | 2023L003583 |
| Courtney Turner | 2023L003830 |
| Detlef Vance | 2023L004110 |
| Tina Ayers Vick | 2023L003713 |
| Nate Vortherms | 2023L003893 |
| Kyla Voss | 2023L003990 |
| Cynthia M. Ward | 2023L003882 |
| Christopher Warren | 2023L003664 |
| Karleythia Washington | 2023L003793 |
| Stephen Weidenhamer | 2023L004106 |
| Mary Jane White | 2023L003584 |
| Kazuko Williams | 2023L004052 |
| Paul Williams | 2023L003586 |
| Quincy Carl Williams | 2023L003834 |
| Rory Williams | 2023L003587 |
| Myisha Wright | 2023L003832 |
| Allen Wronko | 2023L003831 |
| Robert Yasick | 2023L003592 |
| Sheila Furr | 2023L003858 |
| Daryle Peters | 2023L003990 |
| Cassandra Day | 2023L003447 |
| Danielle Barney | 2023L003664 |
| Marilyn Holland | 2023L003463 |